Judge Marshall
delivered the Opinion of the Court
— Jud'ga Ewing taking no part in this decision, as he was not present when the cause was heard.
Knox, as the agent of Smith, having in his charge fifteen boxes of specie, to he taken to New Orleans, and there deposited in bank, to the credit of the Treasurer of the United States, took passage on board the steam boat La Fayette, bound for that city, and had the boxes placed on board — some in his own room, and the rest in the room occupied by the captain and clerk. No bill of lading was taken for them, nor was any entry made of them on the books of the hoat. There was no agreement as to freight for the specie, nor was any charge actually made on that account. But there is evidence-conducing to show, that the master of the boat, at some, period of the voyage, intended to make such a charge.
On the arrival of the hoat at New Orleans, Knox, concluding to leave the specie on board until the next day,, requested the boxes which were in his room to be placed in the room of the clerk. The captain told him he would prefer his taking them on shore, but he replied,, that he u would rather leave them, on hoard until next, morning! it was raining, and about the close of banking hours;” and the boxes which were in his room being, thereupon removed, as he directed, he left the boat. On. the next morning, he learned that one of the boxes had. been stolen during the night, from the clerk’s room, the-window of which appeared to have been forced, and that the clerk had slept that night in the cahin.
To recover the value of the box of specie lost under these circumstances, Smith brought his action on the case, against G. & S. Young, as masters and owners of the steam boat La Fayette, and as common carriers. *92 On the trial, the evidence was substantially as above stated; and a verdict was found for the plaintiff. The defendants excepted to the instructions given at the instance of the plaintiff, and to the refusal of others asked for on their part. And having failed in a motion for a new trial, to the overruling of which they also excepted, they prosecute a writ of error to reverse the judgment against them.
Instructions,
The proper time for a steamboat, or other vessel, to deliver specie to the consignee, is not limited to hanking hours —unless such is the special con- . tract or the established usage of the port — (which usage must be proved;) and an offer to deliver it at any time during the usual hours of business —reasonable regard being had to its safety, and the convenience of the consignee, is as good as one made in banking hours.
Of the instructions given at the instance of the plaintiff, the second and third, which alone need be noticed, are as follows: second — if the officers of the La Fayette took charge of the fifteen boxes of specie, after their arrival at New Orleans, the defendants are liable for the loss of the thousand dollars, unless they have shown, that at the banking hours, after their arrival, they had offered to deliver the same. Third — if freight was to have been charged when the specie was taken on board, the defendants are liable, without other compensation.
According to the first of these instructions, although the. defendants may have offered to deliver all of the boxes to the plaintiff’s agent, after the arrival of the boat at New Orleans, they are liable for the subsequent loss, unless the offer to deliver was made in banking hours. In the absence of all proof as to any usage on this subject in the port of New Orleans, and of any reference to banking hours, in the undertaking of the defendants to carry and deliver the specie, vve do not perceive that, as a matter of law, the right to deliver it is restricted to banking hours; nor that the offer to deliver it within those hours is more efficacious for the discharge of any existing liability, than if made at some other time of the day. If in making, or in offering to make, the delivery, the convenience of the person who is to receive it, and the safety of the commodity after it shall be received are to be regarded, as they probably should be to a reasonable extent — it would seem to be sufficient, if the offer .were made at any time of the day when the business houses of the city were open, and when convenient means were at hand for the safe transportation of the article from the wharf. If, therefore, the offer to deliver the- specie, if made within banking *93 hours, would have affected the subsequent liability of the defendants, it would, in our opinion, have had the same effect if made under the circumstances just designated, though not within “ banking hours.”
An offer to depassennefs’1 baggage, made at a Secimed^dis«barges the mas-from^iabiuTy* as eommon camers, and if the freight still remains, 111 t*ieir custody they hold it as mere , bmjees, acc“lF' to the terms, ex-.'^^“"¡j'inient!
An intention to clli"F' freight; ment for it, will ”e°tb of6 making the vessel liable property °ship-p«l, occurring t0 deliver it. in seaei'al> ,the 1¡a-bility of the master and owners, a? common carsoon as there has bp^rtU1];tytabto deliver theprop^Yhei/und'ertaking, if there is areadiness, tho’ no tender, or actual offer, to deliver it --and however it may happen, that the consignee lets it remain on board.
Whether the defendants were bound for the transportation and delivery of the specie, under the extraordinary responsibilities of common carriers; or received and carried it as a mere appendage to the person of Knox, and as his baggage, and were, therefore, liable only as bailees bound to ordinary diligence: in either case, an) offer to deliver it to Knox, at New Orleans, if made uuder circumstances proper for such a delivery, and then ,,- •• , declined by him, would, m our opinion, put an end to all liability arising from the previous undertaking to ► j. <-» cany and deliver; and the liability of the defendants for any loss afterwards occurring, is to be determined , exclusively by the nature and terms of the contract, express or implied, under which the further custody of the specie was assumed. The instruction under review be- j mg entirely inconsistent with these positions, and being injurious to the defendants, in making their liability rest upon a point which ought not to determine it, is erroneous.
The other instruction, if intended only to designate a circumstance, the existence of which would have rendered the defendants liable as common carriers, for the transportation and delivery of the specie, could not be complained of by the plaintiffs in this court. But if, as is probable, it was intended to declare, that the defendants were liable for the loss which actually occurred, in consequence of the single fact, that freight was to have been charged for the specie, when it was taken on , , , ' board the boat, its effect was, to exclude irom the consideration of the jury other-circumstances, on which the liability more properly depended; and to determine peremptorily the continuance of liability notwithstanding the occurrence of circumstances the legal effect of which would he to terminate it. The views already taken of this subject, if they arc correct, demonstrate, that the *94 intention of the defendants to charge freight, or even an agreement that it should be charged — though it might have had the effect of fixing their character as common carriers in relation to the specie — was not of itself sufficient to make them liable for a loss occurring after an offer, under proper circumstances, to deliver it to Knox. And we consider it true, as a general proposition, applicable to specie as well as other articles, that the liabili- •' ty of the masters or owners of steam boats, as common . carriers, ceases, whenever, after there has been an opportunity of making delivery, according to their undertaking, the commodities to be delivered, remain in the boat, merely for the accommodation of the owner or : consignee — whether it be at his request,, or by his default — and whether there be an actual tender of the ; commodities, or only a readiness to deliver them. This ¡instruction therefore, in the view we take of it, was also, erroneous.
When freight— specie or goods^ avessei,°afte<rdrit livered' anif the consignee has had a fair chance to receive and remove it, and the therebydtscharged as common property still remains on board, nlation for^reward to the master §-c. for the continued care ofit, they are loss, only in case of gross neglect, on their part. It they are to have a°cmiTinued° custody, they are dinary düigeucé f?r th® F®servaerty, andaré liable for ordinary onloursrln^n cases liable ac-express ^greement they make,
*94 As for these errors the cause must be remanded, for another trial, when it is probable the questions arising upon the instructions asked for by the defendants, and refusec^ by the Court, will again be presented, it is pror per now to state the opinion of this Court in relation to those questions: which we shall do without noticing par-1 . . mi- i ticularly the instructions themselves. 1 alung the genr era^ proposition which has just been stated, as the rule for determining, in this case, whether the liability of the defendants, under their original contract for the carriage and delivery of the specie, ceased, before the loss of one °f die boxes occurred — and the same rule is. applicable, whether they were originally liable as common carriers, i -i i , ,. ,, or as bailees, bound to ordinary diligence — the conseqUence in our opinion, is: that if there was an opportumty of delivering the specie to Knox, or an otter to ¿ after qle arrival of the boat at New Orleans, at 7 . 7 a time when the business houses of the city were open, an¿ "when there were convenient means for the safe transportation of the specie from the wharf; and if it was thereafter retained by the oificers of the boat, for the accommodation of Knox, either at his request, or in consequence of his refusal to receive it and have it ta *95 ken away, the defendants retained the further custody* pf the specie only as depositories, bound to use good faith, and liable for loss only in case of gross neglect, unless they were to receive a reward for such further custody, or had entered into some special engagement relative thereto, which indicated the degree of responsibility they were to sustain. That if they were to réceive a reward for the continued custody, they were bound to use ordinary diligence, and liable for loss by ordinary neglect. And that, if there were a special engagement in relation to it, their obligation and liability must depend upon its terms.
For the errors which have been stated, the judgment is reversed, and the cause remanded, for a new trial to be had on principles accordant with this opinion.