## SMITH *v.* THE NASHUA AND LOWELL RAILROAD.

A common carrier, who has performed his contract for the carriage of goods, will still remain liable for their care and custody, until he has delivered, or offered to deliver them to the owner, or done what the law esteems equivalent to a delivery.

The carrier, in whose possession goods are left, becomes chargeable as a depositary, unless the circumstances are such as to entitle him to a compensation for his services, in which case he is liable as a bailee for hire.

As a depositary he is liable only for gross neglect; as a bailee for hire, for ordinary neglect.

Where the owner of goods, carried by railroad, is present at their arrival, and is told that the railroad company cannot store them for want of room, and he still leaves them on their hands, they may be chargeable as depositaries, if they assume the care of the goods, by putting them in their storehouse.

They may refuse to store them, and if they do nothing with them, or merely put them off their premises, without damage, they will not be chargeable.

But if, after such refusal, they assume any care of the goods, it will be competent for the jury to find a waiver of the refusal, and an assumption of the duties of depositaries.

There is no presumption, where the owner is notified that the carrier cannot store the goods, and is requested to take them away, but he still leaves them, that he has made the carrier's servants his own, although they may be forbidden to contract for the keeping of the goods at the risk of the carrier.

CASE. The declaration alleged that on the 1st day of September, 1848, the defendants, in consideration of the delivery of certain hides to them, by the plaintiff, for safe keeping, undertook to keep them safely, but they were not safely kept; by reason whereof they became of no value, &c.

At the trial, upon the general issue, it was not denied, and it appeared in evidence that on the 12th and 13th days of April, 1848, about one thousand hides were sent, by the plaintiff's order, from Boston to Nashua, upon the Nashua and Lowell Railroad, and after their arrival at Nashua, were taken by the defendants' agents from the freight cars, and placed in a building called a hide-house. It was alleged by the plaintiff that this building was leaky, and in an improper condition to be used for the storage of hides, and that

while they were there they were wet by the rain and injured.

It appeared that one lot of 350 hides came on the 12th of April and another lot of 500 came on the 13th. The first were unloaded in an out-building where hides were kept, and before the others were unloaded, the next day, the plaintiff was there, in company with Mr. Kimball, the defendants' freight agent. Mr. Kimball then told the plaintiff that the company were then filling up the Wilton track, and had taken out the basement of the passenger depot, which had deprived them of some room, and in consequence they could not keep or store the hides; that they had no place to put them, and requested him to take them away immediately. And the plaintiff took away a part of the hides that day. The others were unloaded where the first had been put. In the course of a few weeks, Kimball requested the plaintiff's teamster to take away the hides, but he declined, saying he had load enough without them. Kimball was afterwards told that the teamster declined because the hides were wet.

On the 20th of May, Kimball wrote to the plaintiff that the hides were wet, and requested him to direct his teamster to take them away the next trip, as they smelt strongly. The injury to the hides, of which the plaintiff complained, happened before the 20th of May, and the question for the jury was, whether or not the defendants were guilty of gross negligence.

Kimball deposed that he did not engage to keep and take care of these hides on behalf of the corporation; that he had no authority to do so. He had printed instructions, which were posted up in the office. Among these, entitled "Rules and regulations as to freight," were the following:

"4. The place of delivery of goods, &c. to the consignee or owner, is at the depot of their destination only; and if the consignee or owner is not there, ready to receive them at the time of their arrival, and they shall remain at the

depot, they are to be considered as so remaining at the request and sole risk of the owner.

6. . All goods, merchandize and articles whatever, while in the storehouses of the corporation, will be at the sole risk of the owners. Ordinarily, no charge will be made for the use of their storehouses for goods transported by them, but the corporation reserve to themselves the right of charging for an extra use thereof.

7. The corporation disclaim all responsibility for any goods, merchandize or articles whatever, except as the carriers thereof, subject to the limitations established by the foregoing rules and regulations, which are to be considered as the terms of the contract between them and their customers, all their charges for carriage of freight being based on such contract."

Also, a " Notice " " that this corporation will not be responsible for any loss or damage to any baggage or merchandize after it arrives at the place of delivery, and is discharged from the cars ; but if left in any of the company's buildings, or in the charge of any of its employees, it must be at the risk of the owner, and for his accommodation, and not at the risk of the corporation, which undertakes only for the transportation and not the storage of any property, and does not allow its agents to take such risks upon the company's account."

They were posted in a conspicuous place in the office, and Mr. Smith had been there several times, but he could not say he had ever drawn his attention to them before this occurence.

These notices and instructions were annexed to Kimball's deposition, but the court having ruled that they could not be read to the jury, the deposition was read to the jury without them. The counsel for the defendants proposed to disannex these papers from the deposition, that it might be submitted to the jury ; but as the deposition described the notices, and where they were posted, &c., it was held that

Smith *v.* Nashua and Lowell Railroad.

this would not be sufficient, if done, to entitle the deposition to go to the jury.

The court instructed the jury that if the defendants received the hides to keep after their removal from the freight cars, they were depositaries, and were answerable only for gross negligence, and were bound to use slight diligence only, and reasonable care, such care as every man of common sense, under the like circumstances, would take of his own property.

The court ruled that there need not be given to the defendants any express power, by their charter, to enter into any contract of deposit, and to assume the liabilities of depositaries; that a contract for the transportation of goods for hire and a contract for deposit differed from each other, and that the legal liabilities following them were different; that the duty of common carriers being performed, it was competent for the defendants to decline to enter into the contract of deposit; that if the agents of the defendants had, in the beginning, refused to enter into a contract to receive and keep the hides for the plaintiff, yet the jury might find, from the subsequent acts of those agents, that the refusal was waived, and the responsibility assumed by the corporation.

The counsel for the defendants moved the court to instruct the jury that if the agent of the defendants declined to keep or store the hides, and so informed the plaintiff, and requested him to take them away, and he still went off and left them there, it must be presumed that he made the agents of the defendants his own, and must suffer the loss, and that their being so left there, the stowing them away by the agents, was no more than the defendants' duty, and the corporation, by that act, were not made liable in this action.

The jury returned a verdict for the plaintiff, which the counsel for the defendants moved to set aside.

*Metcalf* and *Cushing*, for the plaintiff.

*Wheeler*, for the defendants.

BELL, J.   The declaration in this case claims to charge the defendants as depositaries only.   And the first question which presents itself is, whether they are such.

The ordinary case of a deposit is where the owner of goods delivers them to another, to be kept for him, without any agreement expressed or reasonably to be implied that the person to whom they are delivered shall receive any compensation for his services or care.

But there is a large class of deposits where there is no actual delivery to keep, and no actual agreement to accept the goods, or to keep or take care of them, and where the contract of a depositary is implied from the nature of the transaction or occurrence by which the property comes into the hands of one not the owner, and from the principles of equity and justice, which ought to govern the conduct of men towards each other.

Generally, no person can be compelled to become a depositary without his own consent; but there are cases where a person may be subjected to the duties and liabilities of a depositary simply, or of a depositary for hire, without an intention on his part to enter into any contract, or to assume any liability in regard to the property in question.

The finder of the property of a person unknown, is not bound to interfere with it.   He may pass by it, if he pleases, and has then no responsibility in relation to it.   But if he takes it into his possession, he becomes at once bound, without any actual contract, and perhaps without any actual intention to bind himself to the owner of the property for its safe keeping and return.   And by the better opinion, we think, the duties of a finder of property are, in law, precisely the same, except so far as they may be varied by the provisions of our statutes, as those of a person, who has volun-

tarily received a deposit of goods to be kept for the owner without charge. 1 Banv. Inst. 428; Story on Bailments 61; *Isaac* v. *Clark*, 2 Bulst. 306; 1 Parsons on Contracts 579; Story on Contracts 257; 6 Bac. Ab. 681.

If, however, it is provided by statute that the finder shall be entitled to a compensation for the keeping, or if an agreement to that effect may, under the circumstances, be reasonably inferred, the presumed contract of the finder and his liabilities will be those of a depositary for hire, which differ essentially from those of a simple, that is, gratuitous depositary. Story on Bailments 289; Jones on Bailments 97; 1 Banv. Inst. 406.

A much more numerous and frequent class of cases, where the law imposes the duty of a depositary without any actual contract for that purpose, is where the property of one person is voluntarily received by another, by delivery of the owner, for some different purpose from that of keeping it, and upon an express or implied agreement of a different kind, which has been answered or performed, and the property remains in the hands of such party without further agreement. In such cases the law, having regard to the requirements of justice between men, implies a contract for the keeping of the property, until it shall be restored to the proprietor, or his agent; and the contract thus implied is ordinarily that of a depositary. The holder is bound to take care of, keep and preserve the property, not for the sake of any benefit to himself, nor upon any expectation of compensation for his services; but solely for the convenience and accommodation of the owner. Story on Bailments 292, 347; *Ostrander* v. *Brown*, 15 Johns. 35; *In re Webb*, 8 Taun. 443; *Hyde* v. *Trent and Mersey Nav.* 5 D. & E. 389; *Garside* v. *Trent and Mersey Nav.* 4 D. & E. 581; *Fisk* v. *Newton*, 1 Denio 45; 1 Parsons on Contracts 459; *Thomas* v. *B. & P. R. R.* 10 Met. 472.

The slightest degree of care known to the law is that of a depositary, such slight care as is taken by every man of

common sense of his own property, under like circumstances, as it was well laid down by the court below. This, presumptively, is the extent of the responsibility of one upon whom is thrown the care and custody of property, where he has not voluntarily assumed any liability directly for these purposes. 1 Banv. Inst. 431; Story on Bailments 41; 2 Kent's Com. 560; Ang. Car. 293.

Where a right to receive a compensation for his services may be reasonably inferred from the circumstances of the case, the duty of the bailee becomes that of a depositary for hire, and his liability is increased to a responsibility for ordinary neglect, which is the want of such reasonable care as men in general take of their own property, under similar circumstances. 1 Banv. Inst. 406; Jones on Bailments 49, 96, 97; Story on Bailments 289; *Caileff* v. *Danvers*, Peake 114; *Finneane* v. *Small*, 1 Esp. 315; 2 Kent's Com. 586.

There is this distinction between the case of the finder of goods and that of the person in whose possession such property has remained at the close of a previous bailment. The person who finds an article may leave it untouched. He in whose house or premises the property of another is casually left, may treat it as damage feasant. He may suffer it to remain undisturbed, or he may take it and remove it to a near and convenient distance, and there leave it in a suitable place for the use of the owner, doing it no unnecessary damage while he is removing it, and he will thereby incur no responsibility, speaking without reference to the statute provisions. 2 Saund. Pl. & Ev. 388; 2 Ch. Pl. 548; *Peaslee* v. *Wadleigh*, 5 N. H. Rep. 317.

But the party into whose hands the property of another has come, by virtue of a contract for some other purpose, cannot, when that purpose is accomplished, either leave it where it happens to be, or lay it by and neglect it, unless that may be fairly inferred from the nature of the contract to be the intention and understanding of the parties; but he still continues to owe a duty to the owner, still remains

liable for the care and custody of the property, until he has delivered it to the owner, or his agent, or has placed it in such a situation as may be fairly regarded as equivalent to a delivery to him. *Ostrander* v. *Brown*, 15 Johns. 35; *Fisk* v. *Newton*, 1 Denio 45; 1 Parsons on Contracts 659; Story on Bailments 347; Ang. Car. 289.

The present is a case of this kind. The goods, the loss of which is now in controversy, were delivered by the owner, or his agent, to the defendants, to be transported by them, in the regular and ordinary course of their business as common carriers, from Boston to Nashua. They were accepted by the agents of the corporation for that purpose, and the corporation then became bound to transport the goods, and the plaintiff became bound to pay them a reasonable compensation for their services. The goods were safely transported to Nashua, and after their arrival the plaintiff had notice of it, and opportunity to take them away, but did not remove them. It is clear that the plaintiff, being present at the depot, and having reasonable opportunity to take them away, the duty of the defendants, as common carriers, was fully discharged, and their responsibility as such terminated. *Thomas* v. *B. & P. R. R.* 10 Met. 477; *Young* v. *Smith*, 3 Dana 91.

The freight agent of the defendants, at this time, told the plaintiff they could not keep or store the hides, they had no place to put them in, and requested him to take them away; but they still remained in their keeping. The case furnishes no evidence of any actual agreement to store or keep them, or to take any care or responsibility about them. And it is not suggested by either party that there is any pretence that the company assumed any liability, as warehouse keepers, to keep or store the property for the plaintiff till any future time, for a compensation to be paid for the service. The goods remained in the keeping of the corporation, subject to such duties and responsibilities as the law implies from the relative situation of the parties, and their conduct in respect

to the property. It is not suggested by the defendants that they are liable in any other capacity than as depositaries, if they are liable at all, to this plaintiff. They deny any responsibility whatever.

The persons employed by this corporation did, in fact, remove and place the hides in an out-building, which, as the event proved, was unsuitable and insecure, and though the servants of the company were aware that the hides had been wet by rain, in consequence of the defects of the building, and were, consequently, exposed to injury, no further care was taken of them until they had sustained the damage complained of in this action.

The jury, under the direction of the court, have found that the defendants were chargeable with gross negligence in regard to these hides. And the great question before us is in regard to the instructions of the court, upon which the verdict was founded.

These were that it was not necessary that any express power should be given to the corporation, by their charter, to enter into the contract, and to assume the liabilities of depositaries. It was contended that unless the corporation were authorized by their charter, in express terms, to enter into this contract, they had no power to bind themselves in that way. But we are of the opinion that the ruling of the court upon this subject was entirely correct. Contrary to what would seem to many to be the true principle, the common law gives to all corporations the powers belonging to corporations of their class, unless there is something in the nature of the corporation, or in the terms of its charter or act of incorporation, inconsistent with the exercise of such powers, or there is some general statute restricting their powers. The power to make contracts, to contract obligations as natural persons may do, is laid down in all the elementary books, as one of the ordinary incidents of all corporations not specially restricted. 2 Black. Com. 475; 2 Kent's Com. 277; 1 Banv. Inst. 78; A. & A. on Corporations

84; Kyd on Corporations 70; 1 Parsons on Contracts, ch. 10.

It is not suggested that there is any special restriction upon the power of this corporation to contract. Upon examining the railroad charters in this State, there is as much difficulty to find in them an express authority to the corporation to engage in the business of common carriers, either of persons or property, which is their principal business, as to find such authority to keep warehouses, or to receive deposits. From the powers granted by the charter, and the general principles of the common law, it is inferred that they have the power to transport goods and persons,—a power now recognized by statute. It may be just as readily inferred that they may make any contracts, and contract any obligations naturally connected with and incident to their business.

The jury were also instructed that it was competent for the defendants, after completing their duties as common carriers, to decline to enter into any contract of deposit; but that though the servants of the defendants, in the beginning, refused to enter into a contract to receive and keep the plaintiff's hides, yet the jury might find, from the subsequent acts of those agents, that the refusal was waived, and the responsibility assumed by the corporation.

There can be no doubt, we think, that a common carrier, or other bailee for hire, may refuse to enter into any new contract for keeping the goods, after he has completed his first undertaking for the carriage or the like, and has discharged himself from further responsibility by a delivery of the goods to the bailor, or by a tender or offer to deliver them, or by such an act as the law regards as equivalent to a delivery, as, for instance, in some cases, by depositing them in the storehouse of a responsible warehouse man.

And in such a case, if the bailee persists in his refusal, and does not further interfere with the goods, or does only what every man has a right to do, who finds the goods of

another on his premises without authority, that is, remove them to a convenient distance and there leave them in a suitable place, without injury, for the use of the owner, he cannot be charged with any further responsibility.

In the present case, if it had been made a question, it would have been for the jury to decide whether there was such a delivery of the goods to the plaintiff as would discharge the company of any liability for the goods, or if there was such a tender as would be equivalent to a delivery. But no question of this sort was made at the trial, or here, upon the argument. The transaction was apparently not so understood by either party; and there seems no ground to insist that the defendants had discharged themselves of the custody of these goods. The position taken by them was, that by the neglect of the plaintiff to remove the goods, when he was requested to do so by the freight agent, and by leaving them on the company's premises, he had constituted the servants of the company, who were prohibited to receive goods at the risk of the company, his own agents, and therefore any neglect and consequent loss was his own, and the company was not responsible. This was merely a question of fact, upon which the jury might have passed, if the question had been raised for their consideration, but it was urged as a matter of law, and the court requested to charge upon it as such. Neither of these matters of fact being insisted upon, we must take it upon the case that the goods remained in the possession of the company, subject to such responsibility, on their part, as the law imposes in such case, which is that of a gratuitous depository.

But if the fact in this particular should be taken to be, that the defendants had discharged themselves of all duty or liability to the plaintiff, by what passed between him and their agent, still it might well be a question, as it was made in this case, whether, notwithstanding the refusal of the agent to keep or store these hides, the corporation, by their

subsequent acts, had not waived that refusal and assumed the keeping of them.

As an individual may at first refuse to engage in a business proposed, and yet may afterwards, on further consideration change his opinion and accept the offer, there can be, we think, no doubt of the powers of such corporations or their agents, to do the same. No party is estopped or concluded by such a refusal. And the same kind of evidence will be admissible to prove the waiver of such refusal and the making of such contract, as if no such refusal had occurred. It may be direct proof of a bargain closed in express terms, or evidence of such acts, from which a bargain may be reasonably inferred, or implied. Many, and perhaps most contracts, not required to be in writing, may be proved by evidence of the conduct and actions of the parties. This may be done on two grounds; first, because it may be a fair inference from such conduct, that the parties actually meant so to contract, so understood and intended at the time; and secondly, not because the parties in fact contemplated, or understood, or intended any contract or agreement of that description, or of any kind, but because justice and equity prescribes such a rule of duty between the parties in the relative situations in which they have placed themselves. The law always implies an agreement to do what a man's legal duty requires him to do. A party may therefore decline to enter into any particular contract, he may refuse in the strongest terms to contract, and the parties may separate without coming to an agreement, and yet the party in whose possession property has been rightfully placed, may owe a duty to the owner, which may bind him by an implied contract, or he may by contemporaneous or consequent conduct furnish evidence, by which he may be bound, perhaps by the same contract, into which he had in express terms refused to enter.

There is no difference in these respects between the case of an individual and that of a corporation, except that which

results from the necessity of proving the authority of the
agents, by whom alone the corporation usually act. Their
powers may be express, and to be proved by the corporate
records, or they may be implied, resulting from the official
position of the agent, and from the usual course of the ope-
rations and business of the corporation. Juries are to judge
by the words and the actions of men. These may be and
usually are consistent with each other; but where there is a
purpose to be answered, or a responsibility to be evaded by
false professions, they may be entirely irreconcilable, and
credit is to be given to the one or to the other, as they seem
to the jury to be best entitled to it. It is not in the power
of a principal, either individual or corporation, to limit his
liability by restrictions upon the powers of his agents, while
he adopts or allows a course of business inconsistent with
those restrictions, and indicating more extensive authority.

In the present case, if we were to understand that the
agent of the railroad did in fact utterly decline to store the
hides in question, to take any care or responsibility as to
them, and the parties separated without an agreement, yet
it was competent for the jury regarding the facts, that the
hides came rightfully into the possession of the defendants,
that they did not insist on their right to leave them as they
were or to throw them off their premises, if they had such
right, and that the agents of the corporation removed them
from the cars and placed them in their building usually oc-
cupied for storing hides, to infer that those agents had
changed their minds and concluded to take care of them.
In that event there could be but one legal conclusion, that
having undertaken to keep them and take some care of
them, they were bound to take such care as the law requires
in such cases. The instruction of the court as to the degree
of care and the measure of their liability was correct.
They were bound to use slight diligence. They were an-
swerable only for gross neglect.

The ruling requested by the defendants, that if the agent

of the defendants declined to keep or store the hides, and so informed the plaintiff and requested him to take them away, and he nevertheless went off and left them there, it must be presumed that he made the agents of the defendants his own, and must suffer the loss, and that being so left there, the stowing them away by the agents was no more than the defendants' duty, and the corporation, by that act, were not made liable in this action, was entirely improper.

It cannot be overlooked, that this proposed ruling is inconsistent with itself. The first position is that under the circumstances stated, it must be presumed that the plaintiff made the defendants' agents his own. If that were so, those acts of those agents were the acts of the plaintiff, and done at his risk. The defendants were in no way responsible for them. The second position is that the stowing away of the hides was no more than the duty of the defendants, and the corporation by that act were not made responsible. If it was the mere duty of the defendants, when done by their agents, it would naturally be presumed to be done by the agents, as the duty of the defendants, and not by them as the agents of the plaintiff.

If these inconsistent propositions were regarded as designed to be in the alternative, and unconnected, both are unsound. We see no ground, in fact, for inferring any employment of the railroad agents by the plaintiff. No evidence tends to show any employment of them at that time to do this service, nor any previous engagement of them, nor any subsequent ratification or approval of them, as acts done on his account. If the defendants had supposed there was ground for such a presumption, it was a mere question of fact, upon which the jury might have been asked to pass their judgment ; but there does not seem to us a shadow of ground for saying that there was any presumption of law either the one way or the other. If the fact of the agency of these persons was to be proved like other facts, by the party who asserted it, and the jury were to weigh the evi-

dence, the court could with no propriety have given the charge requested by the defendants.

If the court were properly requested to instruct the jury that the stowing away of the hides was no more than the defendants' duty, we are entirely unable to concur in the conclusion that the defendants were not in point of law responsible. If it was the duty of the defendants to store these hides, and no more, then the question arises, what was the measure of that duty, and then, have they performed that duty? The liability of the defendants must, then, depend upon the decision of these matters of fact, which were precisely those submitted to the jury, and determined by them.

The deposition was properly detained from the jury. The common rule is, that if a deposition contains matter objected to and not put in evidence, it cannot go to the jury.

*Judgment on the verdict.*