Mary L. Mattison, Respondent, v. The New York Central Railroad Company, Appellant.

Plaintiff was a passenger upon defendant's road from R. to P., having the usual checks for her baggage. On arrival at P. she informed the baggage-master at the station that she desired to leave her trunk for a few days. The baggage-master replied that he was not allowed to and could not keep baggage with the checks on; that if she gave up her check the baggage would be perfectly safe. This she did and the trunk was left. It was subsequently delivered to one falsely claiming authority to receive it. In an action to recover the value of the trunk and contents, *held* (Dwight and Earl, CC., dissenting), that the declaration of defendant's agent was, in substance, a notification to plaintiff that he was without power to continue in force the obligation of the company in respect to the baggage indicated by the check, and the surrender of the check was, in effect, an admission of the performance of that obligation, *i. e.*, of the safe arrival and the delivery of the baggage; that, in the absence of evidence tending to show that the agent had power thereafter to bind it by a new agreement, or that the company had acquiesced in the exercise by him of such power, and it appearing that it was in clear violation of the regulations of the company, defendant could not be held liable; and that the submission to the jury of the question as to the authority of the agent was error.

(Argued May 6, 1874; decided September term, 1874.)

Appeal from judgment of the General Term of the Supreme Court in the fourth judicial department, in favor of plaintiff,

entered upon an order denying a motion for a new trial and directing judgment upon a verdict.

This action was brought to recover the value of a trunk and contents, the baggage of plaintiff while a passenger upon defendant's road, alleged to have been lost through defendant's negligence.

In July, 1866, the plaintiff was a passenger on one of the defendant's cars from Rochester to Palmyra, having purchased a passage ticket and procured her baggage to be checked at Rochester. Upon her arrival at Palmyra she informed the baggage-master of the station of her desire to leave her trunk, and one belonging to another person, at that station for a few days, perhaps two weeks, to which he answered that " he could not keep them only so long with the checks on ; " " that they were not allowed to keep baggage with checks on ;. that she could not leave " it and he " could not take it without " she gave up her check, he saying her baggage would be perfectly safe if she gave up her check. She surrendered the check to him leaving her trunk at the depot, and did not return again to the depot until the lapse of about twelve days, when her baggage could not be found, it having, as appeared, been delivered about a week after she left it to a person who fraudulently pretended she was on a westward bound train and wanted it put on board.

Upon the trial, after proving these facts, plaintiff rested, and defendant's counsel moved for a nonsuit upon the ground, in substance, that plaintiff having surrendered her check to the agent he became thereby divested of any authority from the defendant to retain in his custody, as the agent of the company, the baggage in question. The motion was denied and the defendant excepted.

The defendant proved that when baggage was left at that station unclaimed the agent marked it, and at the end of twenty-four hours reported it to the general agent at Albany ; that such baggage was kept in a room provided by the company ; that the baggage-master sometimes stored baggage, when they had more than they could keep, in a little building

described as an accommodation room for luggage, such as railroad and track-master's tools. It also appeared that, by the printed regulations of the defendant then, and for many years previous, publicly posted upon the outside of that depot, the baggage-master was not allowed to store baggage, and that if any remained after arriving at the place of destination it was at the owner's risk.

At the close of the evidence defendant's counsel again moved for a nonsuit upon the ground before stated; also that it appeared that the baggage was permitted to remain at the defendant's depot in violation of its regulations. The motion was denied and the defendant excepted. The court charged the jury, " that if the trunk was retained simply under a bargain unauthorized by the company or its express regulations, then the defendant is not liable," but if they suffered the agent to go on and do such things as he bargained to do, notwithstanding the regulations, they are liable; to this latter proposition the defendant excepted upon the ground that there was no evidence that the defendant did suffer the agent thus to go on. The jury rendered a verdict for the plaintiff. Exceptions were ordered to be heard in the first instance at General Term.

*D. Pratt* for the appellant. Defendant had performed its whole duty and plaintiff should have been nonsuited. (*Roth* v. *Buff. and S. L. R. R. Co.*, 34 N. Y., 548.) The fact that the party who received the trunk was not authorized to do so did not, of itself, constitute negligence on the part of defendant. (*Roth* v. *Buff. and S. L. R. R. Co.*, 34 N. Y., 548; *Burnell* v. *N. Y. C. R. R. Co.*, 45 id., 190.)

*W. C. Ruger* for the respondent. Defendant was responsible for the safe keeping of plaintiff's baggage, and plaintiff's refusal to receive it at the end of her journey did not relieve defendant from liability, but simply changed the degree of responsibility. (45 N. Y., 185; 1 Daly, 202; 1 Den., 45.) The question as to whether there was a delivery of the bag-

gage to plaintiff was properly left to the jury. (26 Wend., 591.) The contract with the agent to keep the trunk a few days was within the general scope of the agent's apparent authority. (49 Barb., 149; *N. Y. and N. H. R. R. Co.* v. *Kip*, 46 id., 546; 50 id., 208; 49 N. Y., 546.) Neither a common carrier nor other party can limit its liability by a mere notice, although it be brought to the knowledge of the person intended to be affected thereby. (43 N. Y., 264; 1 Kern., 485; 48 N. Y., 212; 19 Wend., 235.) Defendant was guilty of gross negligence in delivering the trunk to a stranger. (26 Wend., 595; 42 N. Y., 212; 9 Barb., 176; 5 How., 228; 6 Hill, 588; Story on Bail., § 450.) The agent's declarations while attending to plaintiff's baggage were properly received in evidence. (49 Barb., 148; 8 N. Y., 497.)

GRAY, C. It is doubtless true that, although the liability of a common carrier ceases upon the failure of the passenger to call for baggage within a reasonable time after its arrival at the place of its destination, a modified liability, analogous to that of a warehouseman, continues. (*Burnell* v. *The N. Y. Central Railroad Co.*, 45 N. Y., 184.) And this upon the ground that this modified obligation is incurred at the time of making the contract for the transportation of the passenger and baggage and is a part of the contract itself, and to remain in force for temporary convenience arising from such necessity, as sickness or accident, as will create the presumption that the occurrence which occasioned its being left was within the contemplation of the parties at the time of making the contract. (Id., 186, 188.) Unless the plaintiff has brought her case within this rule she was not entitled to recover. Her passenger ticket indicated her right to a passage to Palmyra; the check for her baggage indicated all that would be presumed from a contract to carry it to and safely deliver at that place. When she arrived there she was apprised by the station baggage-master, to whom she applied for permission to leave her baggage, that he was not allowed

to keep baggage with a check upon it; that she could not leave it, and he could not take it, without she gave up her checks; thus, in substance, apprising her that he was without power to continue in force the obligation of the defendant indicated by the check, but that she could give up the check, leave the baggage, and it would be safe. She surrendered her check, and thus in effect admitted, not only the safe arrival but the delivery of her baggage; and accepted, instead of the obligation of the company, the agent's assurance that it would, if she left it where it was, be perfectly safe. If this arrangement was one which she understood to be made by the agent in behalf of the company, for the storage of her baggage after its obligations to her as carrier was at an end, she was in error. There was no evidence tending to show that the agent had power, after the obligation of the company was thus at an end, to bind it by a new arrangement, by which the company should assume the responsibility of a warehouseman. On the contrary, such an arrangement was in clear repugnance to the regulations of the company at the time of the occurrence; which the learned judge regarded as a full defence to this action, unless it suffered the agent to make such arrangement, notwithstanding the regulations; and in submitting this question to the jury he clearly erred; the case was without evidence to justify the submission of that question for their consideration. In the case of *Dininny* v. *The New York and New Haven Railroad Co.* (49 N. Y., 546) the arrangement to retain the baggage upon the surrender of the check was a necessity forced upon Dininny by the negligence and wrong act of the company; and upon that ground he recovered. (Id., 550, 551.)

This judgment should be reversed.

DWIGHT, C. (dissenting). The sole question to be considered in this case is, whether the goods at the time of the loss were in the custody of the defendant. It is immaterial in what character it held them, whether as carrier or warehouseman, or naked bailee. If it held them at all, it was bound to deliver them to the rightful owner or on his order. Even a

delivery on a forged order would have been no excuse. This rule prevails wholly irrespective of the question of negligence. It is an act of conversion. (*Hall* v. *Boston and Worcester Railway*, 14 Allen, 439; *Duff* v. *Budd*, 3 Brod. & B., 177; *Ostrander* v. *Brown*, 15 J. R., 39; *Hawkins* v. *Hoffman*, 6 Hill, 586.)

There is no question here as to the right to deliver in accordance with checks. These had been taken off with the assent of both parties. If the trunks were, when obtained by the wrong-doer, in the defendant's custody or control, the only way in which they could cease to be in that control, or, in other words, in which the relation of bailor and bailee could be terminated, was by delivery. This would be true, even of the lowest kind of bailment, that of bare finding. A bailment originates with delivery and must terminate in the same way. The burden of proof is on the defendant to show that the bailment is at an end. Non-production of the baggage is *prima facie* evidence of negligence. (*Burnell* v. *New York Central Railroad Co.*, 45 N. Y., 184.)

The defendant claims that it performed its whole duty to the plaintiff, when it placed her baggage at her disposal on the platform of the station and received her checks. The plaintiff answers to this, that the baggageman (Whipple) at the place of destination made an arrangement with her to keep the baggage for a few days while she visited a friend in the vicinity, and that he said that it would be perfectly safe if the checks were given up. On the other hand, it was claimed that the defendant had given verbal directions to its baggagemen not to store baggage at its risk. These, however, were not communicated to the plaintiff. There was testimony to show that the station at Palmyra is one at which a large amount of business is done, and that the defendant has a baggage-room for storing such baggage as comes into their possession and is not taken away.

On the whole testimony, I do not think that there was sufficient evidence to show a complete delivery by the defendant, so as to entirely sever the relation of bailor and bailee.

The strict relation of carrier and passenger was modified by the acts of the parties in accordance with the rule in *Burnell* v. *New York Central Railroad Company* (45 N. Y., 184). The defendant was liable in a character analogous to that of a warehouseman. If the plaintiff had gone away at once, after her arrival, leaving her trunks in the defendant's possession, it would clearly have still held the character of bailee. When the plaintiff surrendered her checks, she did so only for the purpose of enabling the baggage-master to carry out his purpose of following what she supposed to be the defendant's rule. If he had no authority to receive them for that purpose, it cannot fairly be considered that the plaintiff surrendered them. The defendant is in this dilemma: the baggageman had either the authority to store the baggage or he had not; if he had, the defendant is clearly liable; if he had not, then he had no power to receive the checks for the purpose of accomplishing an end beyond the scope of his authority, and the plaintiff had no final intent to deliver the checks. There was thus no intent on the one hand to surrender, and on the other to receive the baggage, which are essential elements in a delivery. An offer to deliver on the part of a carrier, unaccepted by the defendant, relieves him from his strict liability, but he is still liable as bailee. (*Young* v. *Smith*, 3 Dana, 91; 2 Redf. on Railways [5th ed.], 48.) When liability has once attached by a delivery, the carrier remains liable until a full and complete redelivery at the place of destination. (*Camden and Amboy Railway Co.* v. *Belknap*, 21 Wend., 354.) These views would seem to be sufficient to dispose of the questions in the case, so far as raised on the motion for a nonsuit.

It is well, however, to go still further and inquire as to the effect of the special arrangements made by the plaintiff with the baggage-master. Undoubtedly the carrier may, by special notice brought home to the passenger, limit the right of one of his agents to make special arrangements for keeping baggage, so as to continue his liability as *carrier*, or he may

be to entitle him to regard the whole bailment, with all its incidents, at an end. It is clear that, in the absence of restrictions so communicated, the passenger may regard the person who handles and takes charge of the baggage, at the place of destination, as the agent of the company. (*Ouimit* v. *Henshaw*, 35 Vt., 605.) There are cases in which an arrangement, made with such an agent, for delay in delivery, will leave the carrier subject to all his responsibilities. (*Curtis* v. *Avon R. R.*, 49 Barb., 148.) Whether these facts justify such an arrangement, seems to be peculiarly a question for the jury.

There was also some evidence from the custom in the defendant's business, the fact that it had a store-room, and that trunks were on store there, that it allowed the baggagemen to make special contracts for the retention of baggage.

Under all the facts of the case, none of the exceptions to the charge of the judge to the jury are sustainable.

The case of *Roth* v. *Buffalo and State Line R. R. Co.* (34 N. Y., 548) is in no respect opposed to these views. The sole question in that case was, whether the *strict* liability of the common carrier continued, after the lapse of a reasonable time subsequent to the arrival of the goods at the place of destination. In that case the goods were destroyed by fire, after such a time had elapsed, and without the carrier's negligence, and it was held that the owner could not recover. The case concedes that the defendant in that case was still liable as warehouseman. It has nothing to do with facts like those in the case at bar, where the claim is simply that the goods were in the custody of the carrier, in his character of bailee, at the time of the loss, and that he *converted them to his own use*, by wrongfully delivering them to a person having no authority from the owner to receive them. (*Hall* v. *Boston and Worcester R. R.*, *supra ; Duff* v. *Budd, supra.*)

The judgment should be affirmed.

For reversal, LOTT, Ch. C., GRAY and REYNOLDS, CC.

For affirmance, DWIGHT and EARL, CC.

Judgment reversed.