HERMAN BALDWIN, Plaintiff in Error, *v.* THE AMERICAN EXPRESS COMPANY, Defendant in Error.

ERROR TO COOK.

Where it is the custom of an Express Company to enter all packages before delivery, on a delivery book, and upon which a receipt is taken upon the delivery if no such entry has been made upon the delivery book, it will not be presumed that the company has performed its duty.

An Express Company promises to deliver in person ; and unless this duty is performed, it will be held liable. Such companies are common carriers.

At places where the business of an Express Company is not sufficient to justify the keeping of a messenger, it may be discharged of liability for non-delivery in person, if prompt notice is given the consignee of the arrival of a package.

THIS was an action of assumpsit brought at the April term of the Cook county Circuit Court by the plaintiff in error, to recover the value of a package of money which the defendant, as a common carrier, undertook to convey from Chicago, Illinois, to Madison, Wisconsin, and there to be delivered to D. J. Baldwin, or his authorized agents, and which undertaking the said defendant failed to perform.

The plaintiff, by his declaration, alleges, in substance, that on the 6th day of September, 1857, the said defendant was a common carrier of goods and money for hire ; and as such common carrier, the plaintiff, Baldwin, at defendant's request, caused to be delivered to said defendant, at Chicago, a package of bank bills, of the value of one thousand dollars, belonging to the said plaintiff, which said package the said defendant then and there undertook and promised the plaintiff, and became bound by law, to take care of and safely and securely to carry and convey, from Chicago, Illinois, to Madison, Wisconsin, and there to deliver the same safely and securely to David J. Baldwin, or his duly authorized agent or agents, for a reward. Yet the said defendant did not take care of said goods, nor safely and securely carry or convey, and deliver the same as aforesaid ; but so negligently conducted, and so misbehaved, in regard to said package, that the same became and was wholly lost to the plaintiff.

The defendant filed a plea of general issue.

At the April term, 1857, of the Circuit Court, this cause coming on to be heard, by agreement of parties, was submitted to the court for trial, MANNIERE, Judge, presiding.

The court, after hearing the evidence, and the arguments of counsel, found the issues for the defendant, and rendered judgment against the plaintiff for costs, whereupon the plaintiff entered a motion for a new trial, which was overruled.

The plaintiff also entered a motion in arrest of judgment, which was overruled by the court, and a final judgment rendered.

The bill of exceptions shows that the parties, plaintiff and defendant, at the trial, stipulated : That the package of money in question, of the value of one thousand dollars, as specified in the said plaintiff's declaration, was received by the defendant, at Chicago, on the 6th day of September, 1857, to be delivered to David J. Baldwin, or his authorized agents, at Madison,

Wisconsin. That the defendant was a common carrier of goods and money. That said package was never received by said David J. Baldwin, or his agents ; and that the said package was the property of the said plaintiff.

The defendant then read in evidence the following order :

"H. A. Douglas, Ag't Am'n Ex. Co., please deliver to C. T. Flowers, or Dane County Bank, any pkgs. that may come to your office for me. Baraboo, Wis., Aug. 8th, 1857.                    D. J. BALDWIN."

The defendant then read the deposition of one *Henry A. Douglas*, which was, in substance, that he resided in the city of Madison, Wisconsin. In the month of September, 1857, he was the agent, at said city, of defendant, and acted as such, continually, up to the 18th day of March, 1858. On the 8th of September last, a package was received at the office of the defendant, marked ". D. J. Baldwin, Baraboo, $1,000." The cars on which the express matter of that day came, arrived at Madison at about 4½ o'clock in the afternoon, and the express matter of that day came to the office at 5 o'clock, P. M., or a little before. Packages that I knew could be delivered, were entered on the delivery book. This particular package of which I have been speaking was not entered on the delivery book. At the time I was checking in the run, the clerk from the Dane County Bank was in the office of American Express Company, as he usually was, for packages for the Dane County Bank. I said to the clerk : Here is a package for D. J. Baldwin ; will you take it? He said, I will go to the bank and ask them. He went out of the express office at the front door, and came to answer me at the hall door, and put his head in, and says : " Let Flowers have it." Some time after that, Mr. Flowers' clerk, Mr. Willis, came in. I told him there was a package for D. J. Baldwin, and asked him if he would take it. He told me that Flowers was away, and that he had not the key to the safe, and that I should have to keep the package till morning. I understood from him that he would not take it ; that I should have to keep it. After he went out, I put the package into the safe, if I had not done so before. We always take receipts on the delivery of packages. I think I had delivered packages, addressed to Baldwin, to Flowers. Mr. Treadway, the clerk of the Dane County Bank, spoken of, was in the habit of receiving packages addressed to the bank, more frequently than any other person. And he also received packages for Baldwin, and gave receipts for packages.

The defendant below, further to maintain the issue on his part, offered the deposition of *Frederick Memhard*, who testified as follows :

My business was delivering goods for the American Express

Company in September last.   Express matter was then brought
to Madison on the cars, which arrived at the depot at Madison
at 5½ o'clock in the afternoon.   I recollect that on the 8th
of September last, a package was received at the office of the
American Express Company, addressed to D. J. Baldwin, of
Baraboo.   I did not see the package, but Mr. Douglas then
told me he had a package for Mr. Baldwin.   Mr. Douglas told
me to go to Mr. Flowers, and tell him that he wanted Flowers
to receive the package.   On my route delivering packages, I
went to Mr. Flowers' store, and Mr. Flowers was not in.   His
clerk, Mr. Fred. Willis, was there.   I told him there was a
package of money at the American Express Office, for Mr.
Baldwin, of Baraboo.   He said Mr. Flowers was not at home.
He then said, I will go up and see about it.

· The remainder of the testimony is stated, substantially, in the
opinion.

JENKINS & BLANCHARD, for Plaintiff in Error.

SCATES, McALLISTER & JEWETT, for Defendant in Error.

BREESE, J.   The question in this case is, was there sufficient
evidence of a delivery of this package, or of an offer to deliver,
as will discharge the liability of the express company as a com-
mon carrier, or change it into the liability of a depository simply.

There is no count in the declaration against the defendant,
charging any other contract with it than that as a common carrier,
and consequently, all evidence in relation to the security of the
safe, or the absence of a night watch, is out of the question.
The defendant can only be liable as a common carrier, and in
no other character on this declaration.   We do not consider
there is any offer to deliver this package either to the officers
of the Dane County Bank or to Flowers, or to any one in his
employment authorized to receive it, proved.

The testimony of Douglas, the agent of the express company,
taken in connection with that of Memhard, the messenger, of
Treadway, one of the employees of the bank, and of Brown, the
cashier of the bank, and of Willis, the clerk of Flowers, all go
to show that the package was not ever tendered by Douglas, to
either of them, and he shows most clearly that the package was
at no time ready for delivery, either to the bank or to Flowers,
for he says it was the custom at the express office to enter the
packages received in a delivery book, which is also the receipt
book, and by which book they deliver to consignees, who sign
a receipt in this delivery book.   Now this package was never
entered on this book, and of course was not ready for delivery

The bank had no opportunity to refuse to receive the package, for it was not offered to any officer of the bank. One or more of them was informed there was such a package there for Baldwin, but though the bank office was not five steps distant, and in the same building with the express office, the express agent did not take it to the bank, and there offer to deliver it. It was not offered to Flowers, or his clerk, at his place of business. The clerk was merely told by the messenger, when making his rounds, there was a package for Baldwin at the office, and the clerk said he would "go round and see about it." When at the office, the package was not offered to him, and if it had been, he would not have been authorized to receive it at the office, it not having been entered on the delivery book, and the custom of the express company being shown to be, at Madison, to deliver by that book to the consignees in person, or to their authorized agent, at their place of business. An offer to deliver at the express office, if that was proved, under such circumstances, amounted to nothing.

Mr. Fargo, the general agent of this company, says, "we deliver goods actually to the person, or by notice," by which we would understand, that at important towns on their routes, and at the termination of their routes at important towns, they deliver personally; at way-stations by notice, and by depositing the goods or packages in a safe receptacle, if that be the known custom of the company. Such a custom may be reasonable, and therefore legal, and if well established, parties will be presumed as having contracted with reference to it; but at small stations, where the business will not justify them in keeping a special delivery agent, prompt notice should be given to the consignee, in order to discharge them from the strict liability of common carriers. Mr. Van Vleet, the check clerk in the United States express office, says that "the general method of conducting an express business is to take receipts in a receipt book, which is called the delivery book." This was the custom, as proved by Douglas, of the defendants, at Madison.

The cases cited by defendant's counsel, of vessels and railroad companies delivering goods at their landings or depots with or without notice, cannot meet such a case as this, where the undertaking is to deliver in person.

It is the settled doctrine of England and of this country, that there must be an actual delivery to the proper person, at his residence or place of business, and in no other way can he discharge himself of his responsibility as a common carrier, except by proving that he has performed such engagement, or has been excused from the performance of it, or been prevented by the act of God or a public enemy.

*Stephenson* v. *Hart*, 4 Bing. 476 ; *Garnett* v. *Willan*, 5 Barn. & Ald. 53 ; *Duff* v. *Budd*, 3 Brod. & Bing. 177 ; *Hyde* v. *The Navigation Company*, from the Trent to the Mersey, 5 T. R. 389 ; 2 Kent. Com. 604 ; *Gibson* v. *Culver*, 17 Wend. 305 ; *Eagle* v. *White*, 6 Wharton, 505 ; *Moore* v. *Sheindine*, 2 Har. & McHen. 453 ; *Chickering* v. *Forolm*, 4 Mass. 453 ; *Young* v. *Smith*, 3 Dana, 92.

It is necessary, in order to give one security to property, this rigid rule should obtain, and it has for years been enforced against common carriers. They are considered as insurers, and are under that responsibility; and to prevent litigation, and avoid the necessity of going into the examination of matters difficult to be unravelled, the law, very justly, in case of loss, presumes against them. The rule being so rigorous, they are entitled to demand, and do demand, a compensation for their services in full proportion, at least, to the risks incurred. The company in this case, have shown no excuse for the non-delivery of the package. The facts and the law are against them. We have not the opportunity to examine the case of *Marshal et al.* v. *Henry Wells et al.*, in 6 Wisconsin, referred to by defendant's counsel, in which this company prevailed, as is said, upon the same state of facts upon which we have adjudicated. We are inclined to think there must have been some circumstance in that case not found in this, which determined the recovery. It may be the proof in that case showed the entry of the package on the delivery book, and an offer at the bank perhaps, after bank hours, and a refusal to receive it on that account, or some other controlling fact not appearing in this record.

If not so, then we can only say, we differ from the Supreme Court of Wisconsin, in our view of the law upon the facts presented.

The judgment of the Circuit Court is reversed, and the cause remanded.

*Judgment reversed.*