# SUPREME COURT.

## ABRAM WITBECK agt. ALEXANDER HOLLAND, treasurer of the American Express Company.

It is the duty of an *express company*, on receipt of a package to be carried by it, to use due diligence, and to ascertain, by all reasonable inquiry, the *residence* of the consignee to whom the package,is addressed, at the town or city where it is directed, and to deliver the package *to the consignee personally*, at his residence or elsewhere.

The company cannot relieve themselves of the liability arising from the non-performance of this duty, nor change their responsibility from that of a common carrier to that of warehousemen, by giving *notice* to the consignee, either by letter or personally, that the package is at their office ready to be delivered to him upon being called for, and thereafter remains at his risk.

The consignee is under no obligation to call at the office of the company for the package; nor to do more than to notify them of his residence, or place of business, or where he might be found, upon *receiving the notice* that the package had arrived, and that they had made efforts to find his residence or place of business, and were unable to ascertain either.

Where a contract is made with an express company in terms, to carry a package to a certain place to be delivered, by its agents at that place, to other parties to complete the transportation to the consignee, and containing no provision as to the liabilities of parties to whom the package might be delivered by the company; on the delivery of the package to another express company, for transportation to the consignee, the latter company receives the package under no special arrangement, but under the general responsibility of express carriers, without limitation or qualification, except such as the law attaches to such carriers.

In this case the negligence of the company was established by showing that the consignee resided at Schenectady; that the residence at Schenectady of two families of the same sirname as the consignee, was communicated to the company's agent, and that no inquiry was made of either of those families for the residence of the consignee, when inquiry of either must have disclosed it.

*General Term, Fourth District.*

*Before* JAMES, ROSEKRANS, POTTER *and* BOCKES, *Justices.*

THIS was an action to recover the value of a money parcel, which the plaintiff caused to be delivered to the defendant's company at New York, about December 3, 1864, to be carried to Schenectady and delivered to Martin Witbeck, his brother.

The ·plaintiff was a soldier, at Hart's Island. Having received his bounty, he delivered a part of it ($320) to Adams Express Company to take to his brother, Martin Witbeck, Schenectady, N. Y. for safe keeping. Adams Company brought it to New York city, and delivered it to the defendant's company. The latter carried it to Schenectady, and delivered it to its agent there, about December 5, 1865. The agents at Schenectady, not knowing the consignee, examined the city directory to find him. His name was not in either directory, although two were published for that year. These directories contained the names, Abram Whitbeck, Garret Whitbeck, conductor, Luke Whitbeck, conductor, Peter I. Whitbeck and Daniel Witbeck. Peter I. was the father, and Daniel was the brother, of the consignee, while Abram was a distant relative. The two conductors lived at one house. The father, Daniel and consignee lived in one house. Not finding the name in the directory, the agent made out a notice, intended to be addressed the same as the parcel, and deposited it in the post-office, asking the consignee to come and get the parcel and notifying him of its arrival. The notice was addressed, "Martin Whitbeck, Schenectady, N. Y." While the parcel was addressed, "Martin Witbeck," &c. The notice never was received by Martin. Plaintiff wrote to his brother about the parcel, December 8, 1864, but the letter was not received until February, 1865. He immediately went to the office of defendant's company, demanded the parcel, but was informed that it had been stolen on the 17th of January, 1865. Their safe had been blown open and it, with other money parcels, had been taken by the burglars. The other facts are set out in the opinion. The cause was tried before Hon. D. C. Smith, referee, who reported for the plaintiff.

HOOPER C. VAN VORST, *for appellant.*
JOHN L. HILL, *for respondent.*

Witbeck agt. Holland.

*By the court,* ROSEKRANS, J.—The evidence fully justified the referee, that the defendant did not make due effort, nor use due diligence to find Martin Witbeck, the consignee of the package, for the recovery of the value of which the action is brought.

It appears by the testimony of John Bradt, one of the defendant's witnesses, that in December, 1864, soon after the arrival of the package at the defendant's office in Schenectady, Morse, the defendant's agent, made inquiry of him as to Martin Witbeck, the consignee; and although Bradt did not know Martin Witbeck, Morse was informed by him of the residence in Schenectady of Fort Witbeck, Peter I. Witbeck and the two Witbecks who were conductors upon the railroad. The defendant's agent therefore made inquiry of the two conductors, but made no inquiry of the other two Witbecks, whose names had been communicated to him. One of whom was the father, and the other the brother of Martin Witbeck, the consignee; and with the former of whom Martin Witbeck was ;then living, at No. 11 Park Place. It is quite clear that had the defendants made inquiry of the consignee's father, they could have ascertained where the consignee could have been found, and thus have been enabled to fulfill their contract to deliver the package to him personally.

It was the duty of the defendants to ascertain, by all reasonable inquiry, the residence of the consignee at Schenectady, and to deliver to him, at his residence or elsewhere, the package entrusted to them for that purpose. This duty is implied from the very nature of the business in which the defendants were engaged, and for the service of carrying the package, and ascertaining the residence of the consignee and the delivery of the package to him personally, they were entitled to charge a reasonable compensation. Nor could the defendants relieve themselves of the liability arising from the non-performance of this duty, nor change their responsibility from that of a common carrier to that of

warehousemen, by giving the notice to the consignee either by letter or personally, that the package was at their office ready to be delivered to him upon being called for. The defendant's contract was to transport the package to the place where the consignee resided, as indicated by the direction upon it, to search for him at that place, and to deliver the package to him at his residence, or place of business, or elsewhere; but the consignee was under no obligation to call at the office of the defendants for the package, nor to do more than to notify them of his residence, or place of business, or where he might be found at Schenectady, upon *receiving* the notice, in some way, that the package had arrived, and that they had made efforts to find his residence or place of business, and were unable to ascertain either.

Had the letter, which the defendants caused to be deposited in the post-office at Schenectady—addressed, not to Martin Witbeck, but to Martin Whitbeck—been received by him, it would not have relieved the defendants from their liability as common carriers for the loss of the package. It contained no information to the person to whom it was addressed that the defendants were not able to fulfill their contract by delivering the package to the consignee, or that they had made any efforts to ascertain his residence or place of business, which were ineffectual. It merely stated that the defendants had received the package (describing it), and that the package was at the risk of the owner at their office. The consignee might, upon the receipt of this letter, have remained silent, or answered to the defendants in these words: "Fulfill your contract to deliver the package to me; and as to the package being at my risk while it remains in your hands, I would say, you have no right to impose such terms unless they were contained in the original contract under which you received the package, and if they were, the information is unnecessary on your part."

The general rule is, that a common carrier is bound not only safely to convey, but safely to deliver a parcel which

he has undertaken to carry, at the place to which it is directed to the consignee, personally. Personal delivery, however, is sometimes dispensed with in the case of carrying by ships, boats and railways. Notice given to the consignee of the arrival and place of deposit, comes in lieu of personal delivery in such cases. (*Fisk* agt. *Newton*, 1 *Denio*, 45.) The rule is different, however, in regard to express carriers.

The duties of express carriers are stated in an article written by Judge Redfield, published in vol., 5 *Amer can Law Register, page* 7, as follows : " In turning our attention more especially to the responsibility of express carriers, the first consideration distinctive of this mode of transportation is that they are bound to deliver parcels to the persons to whom they are addressed. This was the general rule as to carriers by land, until since the introduction of railways. (*Hyde* agt. *Trent and Mercy Nav. Co.*, 5 *T. R.* 389 ; *Stephenson* agt. *Hart,* 4 *Bing.*, 476 ; *Farmer's and Mechanic's Bank* agt. *Champlain, Trans. Co.*, 23 *Vt. R.*, 186.) Since the introduction of railways, carriers in that mode have been exempted from personal delivery of their parcels, and allowed to deposit them in warehouses, and thus exonerate themselves from the longer continuance of the responsibility of carriers. (*Thomas* agt. *Boston and Prov. R. R. Co.*, 10 *Metc.*, 472.) But the great necessity of having express carriers arose from this defect in delivering of goods by the ordinary railway transportation, and the same defect also, existed in regard to the delivery of goods transported by steamboats. They could only deliver at the wharfs and were not expected to employ special messengers and porters to deliver their goods. (*Clarke* agt. *Fowler*, 4 *Pick.*, 371.) But it was to remedy this inconvenience and restore the carrying business by land to its former state, in some degree that express companies have come into use with the distinctive character of making personal delivery of their parcels to the consignees. (*Redfield on Railways, sec.*, 127.)

This has been so often decided that it is scarcely required that any considerable number of cases should be cited. This question is considerably examined and the views just stated fully confirmed in the case of *Baldwin* agt. *The American Express Company*, (23 *Ill.*, 197 ; *affirmed* 26 *Id.*, 504.*")*

It is claimed that the contract between the consignor and the Adams Express Company, under which the package was forwarded by the Adams Express Company, from Hart's Island to New York, and there delivered to the defendants for transportation is to control the liability of the defendants and limit it to that of forwarders merely. It appears, however, that the contract with Adams Express Company by its terms, was to terminate upon the delivery of the package by its agent in New York, to other parties to complete the transportation to the consignee. It contains no provision as to the liabilities of parties to whom the package might be delivered by the Adams Express Company. It did not provide for the transportation of the package over the whole route ; and the case shows that there were no business relations between the Adams Express Company and the defendants, for the transportation of packages over the entire route. Under these circumstances the contract between the Adams Express Company and the consignor has no effect upon the liability of the defendants. They received the package under no special arrangement, but under the general responsibility of express carriers without limitation or qualification, except such as the law attaches to such carriers.

The evidence given by the plaintiff, that Martin Witbeck was well known at Schenectady, was wholly immaterial and should have been rejected by the referee, bnt its introduction could not possibly have tended to the injury of the defendant. The negligence was established by showing that the consignee resided at Schenectady, that the residence at Schenectady of two families of the same sirname as the consignee, was

communicated to the defendants agent, and that no inquiry was made of either of those families for the residence of the consignee, when inquiry of either must have disclosed it. The judgment should not be reversed for this erroneous evidence. The judgment should be affirmed.