# American Merchants' Union Express Company

## *v.*

## Joseph Schier.

1. Express companies—*duty and liability as to route selected.* An express company receiving a package for transportation, billed and transported the same, by railroad, the usual mode of transit from the place of shipment, to a point from which it found its way, by the usual route from the latter place, to a station a few miles from the place of destination, which was off the line of any railroad, and was there placed in a warehouse of the company. The warehouse, together with the package, was, a few weeks afterwards, destroyed by fire. It appeared the place to which the package was thus billed was not the usual nor the proper place to which to bill packages designed for the place of destination, and by reason of being sent by an improper route, the package reached the place where it was destroyed, which was not the usual place at which to receive packages for the point to which the package in question was shipped. No notice was given to the consignee of the arrival of the package at that place: *Held,* in an action by the consignee against the company, on the objection by the latter that the plaintiff failed to apply for and receive the package at the place where it was lost, within a reasonable time, the company were liable for non-delivery of the package, having billed it to an unusual and improper place, by reason of which it was carried to the place where it was lost, and they were, therefore, first in fault; and further, had neglected to give the consignee notice that the package was at that place.

2. It is the undertaking of an express company receiving a package for transportation, in the absence of a special contract, to transport the same to the place of destination by the most usual, the safest, the most direct and expeditious route, and there deliver it to the consignee.

3. Same—*duty to transport to the place of destination.* An express company received a package for transportation, the destination of which was a place a few miles off from any railroad. The usual mode of transit from the point of shipment was by railroad, but there was a daily line of stages from a railroad station, to which the package was carried, to the place of destination, by which express packages were usually carried from that station, and this package was of such character as to be conveniently carried in that mode: *Held,* it was the duty of the company to have forwarded the package by the stage line to the place of destination, there being no special contract relieving them therefrom.

4. Same—*lien upon property for charges.* An express company have a lien upon goods carried by them, for their own charges for transportation and for charges advanced by them to another carrier.

5. And where goods are delivered to a person at a place off the regular line of carriage of the company by railroad, who has been accustomed to receive express packages and collect charges upon them, such person, being *pro hac vice* the agent of the company, would have a right to retain the goods until the charges were paid.

6. Same—C. O. D.—*the meaning thereof.* The letters C. O. D. placed upon a package shipped by express, mean the value or price of the package, and which, as marked thereon, will be collected on delivery and transmitted to the consignor. Those letters have nothing to do with the transportation charges upon a package.

7. Same—*burden of proof, in case of loss.* Where goods are delivered to an express company for transportation, the company become in the nature of insurers, and in case of loss, the burden rests upon them of showing some legal excuse therefor.

8. Contract—*receipt given for goods by an express company.* The mere delivery of a receipt by an express company to a shipper of goods is not conclusive upon the latter in reference to the question, whether the conditions set forth in the receipt constitute the contract of the parties. Whether the shipper had knowledge of its terms and assented to its restrictions, is a question of fact for the jury to determine upon evidence *aliunde,* and all the circumstances attending the giving of the receipt are admissible in evidence, to enable the jury to decide the fact.

Appeal from the Circuit Court of Jo Daviess county; the Hon. Benjamin R. Sheldon, Judge, presiding.

This was an action of assumpsit, brought by Schier against the American Merchants' Union Express Company, to recover the value of a trunk and its contents, received by the company for transportation, and not delivered by them at its destination, to the consignee. It appears the trunk was transported to a point a few miles from the place of its destination, where it was placed in a warehouse which soon after, together with the trunk and its contents, was destroyed by fire.

The company insist they are not liable, because the consignee did not, as was his duty, apply for and receive his trunk at the place where it was lost, within a reasonable time after it reached

that point.   The owner of the property, on the contrary, contends that the company billed and carried the trunk to an improper and unusual place for packages intended for that destination, and therefore, being first in fault, are liable; moreover, that it was the duty of the company to deliver the trunk to the consignee at the place of its destination.

Messrs. Jewett, Jackson & Small, for the appellants, cited *Van Santvoord* v. *St. John,* 6 Hill, 157; *Farmers and Mechanics' Bank* v. *Champlain Trans. Co.* 18 Vt. 140; *Thomas* v. *B. & P. R. R. Co.* 10 Metc. 472; *Norway Plains Co.* v. *B. & M. R. R. Co.* 1 Gray, 263.

Messrs. D. & T. J. Sheean, for the appellee, cited *Herman* v. *Goodrich,* 21 Wis. 536; *Angle* v. *Miss. & Missouri R. R. Co.* 18 Withrow (Iowa), 555; *Baldwin* v. *Am. Ex. Co.* 23 Ill. 198; *Western Trans. Co.* v. *Newhall,* 24 Ill. 466.

Mr. Justice Breese delivered the opinion of the Court:

This was an action of assumpsit, brought to the Jo Daviess circuit court by Joseph Schier, against the American Merchants' Union Express Company, to recover damages for the non-delivery of a trunk and its contents belonging to the plaintiff, of the value of $135, entrusted to the defendants as common carriers, at Galena, in this State, and consigned to plaintiff at West Goshen, in the State of Connecticut.

The jury found for the plaintiff the value of the trunk and contents in damages.  A motion for a new trial was overruled and judgment rendered on the verdict, to reverse which the defendants appeal, assigning as error the refusal of the court to grant a new trial, that the verdict was contrary to the law and the evidence, and against the instructions of the court.

The trunk in question was delivered to the agent of defendants at Galena, on the twenty-first of January, 1869, by Herman Schier, the brother of appellee, and for which the agent

gave him the usual receipt. He could not then read or write English, nor was the receipt explained to him, nor did he know its contents. Neither he nor his brother, at that time, could read or write English, having come from Prussia in November, 1868.

The trunk, it appears, was billed by the agent at Galena to Palmer, in Massachusetts, a station about ten miles east of Springfield, on the Boston and Albany railroad, and found its way, by several transfers, to a station of the Adams Express Company, called Wolcottville, on the Naugatuck railroad, and about eight miles east of West Goshen, on the twenty-sixth of January, 1869, and was there placed in a warehouse belonging to the Adams Express Company, where it remained until the second day of March following, when the warehouse was consumed by fire, and the trunk and its contents with it.

The case turns very much upon the question, was Wolcottville a proper place for this trunk to have been sent by appellants? But there is a question preliminary to that to be settled —was Palmer a proper place to which to bill the trunk? If it was a proper place, then Wolcottville would be, perhaps, under the circumstances, a proper place to which it should have been sent, as there was a daily stage carrying express matter from that place to West Goshen. If Palmer was not the proper place to which to bill the trunk, then the company did not properly discharge their duty, and are responsible for the consequences.

Upon this point, the witness most relied on by appellants, E. G. Westcott, the superintendent for the Adams Express Company, testified that Palmer was an improper place to bill property to from Galena, Illinois, for West Goshen.

This, of itself, ought to be sufficient to settle the controversy. The first fault being with the company, and by that fault the loss was occasioned, the company should suffer the loss. The undertaking of the company, in the absence of any special contract, was, to transport the property to the place of destination by the most usual, safest, most direct, and most expeditious route, and there deliver it to the consignee. What was

the most direct, usual, and most expeditious route for this trunk, as established by the testimony?

The Housatonic railroad branches from the Boston and Albany railroad at Pittsfield, near the western boundary of the State of Massachusetts, and, running south, reaches West Cornwall, in Connecticut, a station upon it eight miles west of West Goshen, at which there is a regular daily line of stages to West Goshen for the conveyance of express matter, and the general custom is, when express packages are received at Cornwall, directed to well known persons at Goshen, for the express agent at Cornwall to send them by the stages, and the drivers collect the charges. West Cornwall station is but forty-nine miles south of Pittsfield.

Isaac Marsh, who had been a railroad and express agent at that place for twenty-five years, says, in answer to the question, what was the usual and customary place, generally, to bill property to, sent from the west by express to West Goshen, during the month of January, 1869, and prior, he supposed it was billed to Pittsfield, thence to West Cornwall as the most proper place; and as to property expressed from Galena, and directed to West Goshen, he says, it would be more proper to bill to Pittsfield, thence to West Cornwall, from the fact that the distance between the two places is but forty-nine miles, while the nearest route by rail from Pittsfield to Wolcottville, by way of Springfield and Palmer, would be 162 miles. He says, freight left at Pittsfield for West Goshen would reach its destination the next day, but if sent by Springfield it must be delayed longer. He supposes West Cornwall to be the usual and customary station nearest West Goshen when property arrives, sent by express from the west to West Goshen. It may have been sent to Wolcottville by interested express companies. The business of this witness was to take charge of all packages designed to be forwarded by express; keep an account of and forward the same; take charge of all packages received for delivery at the office, collect charges on them, deliver or forward to consignees, if known, and if the parties

lived off the line, to notify them by mail of the receipt of the packages, with the charges on them.    He further says, if property sent by express in January, 1869, was billed at Galena to Pittsfield, it would arrive, in due course of transportation, at West Cornwall, for West Goshen, in about four days.    He further says, that appellants had an office in Pittsfield in January, 1869, and the Housatonic railroad had an agent there, who received and forwarded packages over that road.    Property sent from Pittsfield to West Cornwall would pass over this road, and it would be the usual, and by far the most direct and shortest route to West Goshen.    This railroad, in the months of January and February, 1869, furnished ample facilities for the transportation of property over it, each agent being authorized to act as agent for the Housatonic and New York Express, established by the Housatonic railroad company, who were perfectly responsible for all goods passing through their hands. Should think Wolcottville an unusual place to send goods billed from the west.

This witness also states, that during these months, appellants transferred to this railroad at Pittsfield, for transportation to West Cornwall and vicinity, a bill of castings in December, 1868, and on the first, second, eleventh, fourteenth, fifteenth and twenty-sixth of January, 1869, divers other bills, box and package, and in February, many more.    He concurs with appellants' witness, Westcott, in saying, that Palmer would be an improper place to send property billed from the west, directed to West Goshen, as that place is sixty-eight miles southeast of Springfield, and property sent to it from the west must pass through Pittsfield to reach Palmer.    If property was, at Palmer, directed to West Goshen, the shortest and most direct route would be by way of Springfield, Hartford, Waterbury and Wolcottville, as the distance from Palmer to the last named place by this route is ninety-four miles.    The route would be from Palmer to Springfield, fifteen miles west; then change for Hartford, twenty-six miles south ; then change for Waterbury, thirty-three miles southeast; then change for Wolcottville,

10—55TH ILL.

twenty miles north.   He further says, that neither appellants nor the Adams Express Company had an agency at West Cornwall in January or February, 1869, but he knows that both those companies delivered goods for transportation to the company that operated this railroad, in those months, and also, during that time, received goods from the Housatonic and New York Express Company for transportation—of the latter, ten packages in one day were delivered to appellants at Pittsfield for transportation, all from West Cornwall and for West Goshen parties.

Mills, the agent of appellants at Galena, says the trunk was billed to Palmer, and it would go where it was billed to; Palmer was an improper place to bill the property—it should have been billed to Springfield.

Mr. Westcott, whose testimony in part has been noticed, says he was acquainted with the routes of express companies in Connecticut, and that packages for West Goshen, coming from the west over the New York Central during January and February, 1869, would necessarily have to pass over the Boston and Albany railroad from Albany to Springfield; thence to Hartford, Conn., *via* the Springfield and New Haven road; thence to Waterbury, Conn., over the Hartford, Providence and Fishkill road; thence, *via* Naugatuck road, to Wolcottville.   He further says, there was a special reason in January and February, 1869, why matter sent by express from the west to West Goshen, should have been sent to Wolcottville, instead of West Cornwall, which was, that the Housatonic railroad, upon which the latter place is a station, was not, during those months, operated by any express company recognized or connected in any way with the older express companies. On his cross-examination, he says, the reason above given began about March, 1868, and ceased about April, 1869, and further says, Pittsfield is nearer West Goshen or West Cornwall than Palmer is to the same place, or to Wolcottville, and that Palmer is an improper place to bill property to from Galena, destined to West Goshen, and further answering,

corroborates Marsh in his statement of the various transfers of packages sent to Palmer for West Goshen, and he says, that goods from the west for West Goshen may be delivered at either Wolcottville or West Cornwall.

This is the substance of the testimony on the question of routes, and while it is fully established that the route from Pittsfield by the Housatonic railroad to West Cornwall is the shortest, most direct and most expeditious, it was not, in January, 1869, the most usual route, and for the reason appellants chose to make what would appear to be an unjust discrimination between companies employed in this kind of transportation. We say unjust, because it is proved the company operating the Housatonic railroad from Pittsfield to West Cornwall was a reliable company, and worthy of the public confidence, and it is further proved that, in that very month, appellants did business with them to a very considerable amount.

It is not true, as stated by Westcott, that packages from the west, destined for West Goshen during January, 1869, would *necessarily* have to pass over the Boston and Albany railroad from Albany to Springfield, and thence by the circuitous and long route he specified. Appellants in that very month sent packages from Pittsfield for that locality by the Housatonic railroad, and received them from that road, as many as ten in one day. Why was not this trunk sent by that route? The reason is, first, because it was not properly billed. Had the trunk been billed to Pittsfield, as it should have been, a run of forty-nine miles would have taken it to West Cornwall, and thence by stage, running every day to West Goshen, where it would have arrived by the twenty-sixth of January, and where appellee was ready to receive it, and at which place inquiries for it were made by Mr. White, the employer of the consignee, two or three times every week. Neither he nor the owner, nor Mr. Hart, the assistant post master at West Goshen, ever thought that the trunk would be sent to Wolcottville, a place so unusual for packages coming from the west destined for West Goshen, and east of West Goshen.

But if the trunk was properly sent to Wolcottville, the agent there was derelict in his duty in regard to it. It was consigned to appellee at West Goshen, and express matter was constantly sent by the daily stage from Wolcottville to West Goshen. The agent himself says: "Express matter from Wolcottville to West Goshen, upon which large sums are due, to be collected on delivery, are sent by a daily stage to West Goshen, but were not in the habit of sending packages with C. O. D. bills attached until the amount is paid in full." But this was not a C. O. D. matter—no C. O. D. bill was attached, nor could there be, in the nature of things. Those letters mean the value or price of the package, and which, as marked on the package, will be collected on delivery and transmitted to the consignor, who has sold it. Those letters have nothing to do with the transportation charges upon a package. *Am. Express Co.* v. *Lesem,* 39 Ill. 312.

This trunk weighed but about one hundred pounds. A weight so light as this could be easily carried by the stage, and should have been forwarded by that mode of conveyance, as it was the usual and customary mode.

This court held, in the case of *Baldwin* v. *Am. Express Co.* 23 Ill. 197, that express companies were bound to deliver to the consignee, and unless this duty is performed they will be liable; but at places where their business is not sufficient to justify keeping a messenger, they may be discharged of liability for non-delivery in person, if prompt notice is given to the consignee of the arrival of the package.

Eldridge, the stage driver, says, he is acquainted with the general custom in regard to sending express goods and packages from the railroad stations to West Goshen. The custom is, whenever any such packages arrive at those stations (meaning West Cornwall and Wolcottville), for the stage driver from either station to West Goshen, to take them (all packages except those with the C. O. D. bill attached) and leave them at the post office in West Goshen, where those expecting express packages usually go to find them. Mr. Hart, the assistant post master at Goshen, says the same.

The trunk in question was liable only to the charges upon it for transportation, first, from Bremen, in Germany, to Galena, $20.99; next, from Galena to West Goshen, $6.66, and for which the post master at West Goshen, being *pro hac vice* the agent of the express companies, would have had the right to retain the trunk until they were paid. The express company had a lien for those amounts. *Gal. & Chi. Union R. R. Co.* v. *Rae*, 18 Ill. 488; *Bissell* v. *Price*, 16 Ill. 408. So that no risk was run which could not be amply compensated by the contents of a trunk, valued at $135.

There being no special contract in this case, appellants were bound, in the performance of their duty, to deliver this trunk when it reached Wolcottville, to the daily stage carrying express matter to West Goshen, in a reasonable time, according to the usual course of the business, and with all convenient dispatch. This they did not do, nor did they give notice by mail to the consignee at West Goshen. Saxty, the agent at Wolcottville does not testify to any such thing. He says he was not in the habit of mailing letters. He did send a letter by the stage driver, which the driver showed to a person named Joseph Sherry, but if he had inquired at the post office, he would have been informed by Mr. Hart who this Joseph Schier was, as he, through Mr. White, was calling almost daily at the office for information respecting his trunk. Had the driver left the letter at the post office, appellee would have received his trunk, probably all he owned, and this action would not have been brought.

The record teems with evidence of negligence on the part of appellants—first, in not billing the trunk properly, and sending it by the most direct route; second, in failing, on its receipt at Wolcottville to put it on the stage going to West Goshen with all reasonable dispatch; and last, failing in that, in not giving the consignee at West Goshen notice of the receipt of the trunk, through the post office. We see nothing in the record of an exculpatory character of which appellants should have the benefit. They are a powerful corporation,

extensively ramified by its many connections and combinations with other common carriers. They must be held to a reasonably strict performance of their duties. The delivery of the goods created the liability of appellants to deliver them at their place of destination. They were in the nature of insurers, and their loss throws upon appellants the burden of showing some legal excuse. This they have failed to do, and, consequently, must respond in damages.

On the point, that the receipt given by appellants for the trunk is the contract of the parties, it is only necessary to refer to the case of *Adams Express Co* v. *Haynes*, 42 Ill. 89, where it was held, that the simple delivery of a receipt to a shipper is not conclusive upon the latter. Whether he had knowledge of its terms, and assented to its restrictions, is for the jury to determine as a question of fact upon evidence *aliunde,* and all the circumstances attending the giving of the receipt, are admissible in evidence, to enable the jury to decide that fact, and it was so put to the jury by the first instruction of the court.

We prefer, as it is our duty, to stand by the ruling in this case rather than that of the supreme court of Massachusetts, in the case of *Grace* v. *Adams et al.* 100 Mass. 505, cited by appellants.

In every view which we have been able to take of this case, we are satisfied none of the errors are well assigned. The evidence fully sustains the verdict, and the judgment must be affirmed. The cost of appellee's abstract must be taxed against appellants, the same being necessary to a proper understanding of the case.

*Judgment affirmed.*