Wiixiams, J.
1. A question of pleading presented by tbe record, will be first noticed. That question arises upon the refusal of the court to give in charge to the jury, an instruction, requested by the defendant below, to the effect that the action could not be maintained as one for conversion^. because the petition failed to áver a demand for the property. It is contended, that where the property of one person, has lawfully come to the possession of another, a refusal by the latter to deliver it to the owner on his demand, is necessary to constitute a conversion of it, and therefore, the petition, in an action for its conversion, must contain an allegation of such demand and refusal.
The allegation is not essential. A refusal to deliver the property on demand of the owner, may show such an assumption of ownership or control of it, as to afford satisfactory evidence of a conversion, but it is only evidence. The ultimate fact to be pleaded is the conversion; and in actions of that nature, a petition which, with proper allegations of the plaintiff’s ownership of the property, and of its value, avers that the defendant converted it to his own use, states a cause of action. ii¡
2. It is claimed the trial court erred in its refusal to instruct the jury that, if the goods described in the petition were tendered to the plaintiff, on the 4th day of May, 1885, and he refused to take them into his possession, and they were afterward, without the fault or negligence of the defendant, stolen and lost, the plaintiff could not recover.
The evidence tended to show, that the goods arrived at the defendant’s depot in Shawnee on the morning of the 4th of May, 1885, and the same'day the plaintiff saw them there, but did not take them away. The next day, notice of the arrival of the goods was received by the plaintiff, through the mail, and the night following they were stolen from the depot where they had been placed by the defendant; none of them were recovered, and the perpetrators of the crime are unknown.
*496 The claim of the plaintiff in error is, that upon the failure of the plaintiff below to take possession of the goods, after notice of their arrival, the liability of the defendant as a carrier ceased, and its obligation became that of a bailee only, which was to use ordinary care for the preservation of the property; and, as the property was lost without the fault or negligence of the defendant, it could not be held responsible for the loss. As a general rule, when the carrier has done all that the law requires toward effecting a delivery of the property, but is unable to accomplish it, and the property is so necessarily continued in his possession, his obligation becomes that of a' depository only. He is no longer an insurer of the property, and may show that it was lost without his fault or negligence, and thereby exonerate himself from liability. But what is required with respect to the delivery, is not the same as to all classes of carriers. The undertaking of express companies is to maké delivery of the property entrusted to them for carriage, to the consignee personally, with all reasonable dispatch; and to this obligation they are held by the law with great strictness. An exception has been made to this rule, in some cases, where the business of the company is so small at the place of delivery, as not to justify the employment of the neq^ssary means of making immediate personal delivery. In those cases, it is held, that the conduct of the company must be in conformity with a usage in reference to which it is presumed the parties contracted. Baldwin v. Express Co., 23 Ill. 197; Express Co. v. Scheir 55 Ill. 140. And it is incumbent on the company to establish the facts which give rise to the exception to the general rule governing its liability.
But, without deciding whether the facts stated in the instruction requested, would relieve the defendant, if there were no other issue to be passed upon, the instruction is open to the objection, that if given, it would have required the jury, simply upon the finding of those facts, to return a verdict for the defendant, notwithstanding others, which the evidence established to the satisfaction of the jury, would render the defendant liable, and entitle the plaintiff *497 to the verdict. The claim of the plaintiff was, that the defendant had converted his goods to its own use, before they were taken to Shawnee. His action for their conversion had been brought some months before they reached that place, and was pending when they arrived. He gave evidence tending to prove, that the defendant received the goods at Newark, for transportation by express, on the 2nd day of January, 1885, and the goods not having arrived at their destination, the plaintiff went to Newark to hunt them up, where he made inquiry about them, of the agent of the defendant at that place, who informed him he did not know where they were. The evidence further tended to show, that defendant’s agent at Newark, on the 5th day of January 1885, and before his interview with the plaintiff, had, under the direction of the defendant’s officers, shipped the goods to Baltimore, Maryland, consigned to the care of an officer of the defendant company, who received them, and held them there until the following May; and, that they were so shipped to, and detained at Baltimore, for the purpose of preventing their coming to the possession of the plaintiff, and depriving him of their control and disposition. The defendant claimed it was'justified in the course it pursued, upon grounds which will be noticed hereafter. Whether the justification was made out, was a question of fact for the jury, under the instructions of the court which will also be hereafter noticed. Unless the justification was established, there appears to have been evidence, as shown by the record, from which the jury might find, as they did, that there was a conversion of the goods by the defendant; for, in order to constitute a conversion, it was not necessary that there should have been an actual appropriation of the property by the defendant to its own use and benefit; it might arise from the exercise of a dominion over it in exclusion of the rights of the owner, or withholding it from his possession under a claim inconsistent with his rights. If one take the property of another, for a temporary purpose only, in disregard of the owner’s right, it is a conversion. Either a wrongful taking, an assumption of ownership, an illegal use or misuse, or a wrongful detention of chattels, will *498 constitute a conversion. “Whoever,” said Chief Justice HolT, in Baldwin v. Cole, 6 Mod. 212, “takes upon himself to detain another man’s goods from him without cause, takes upon himself the right of disposing of them,” and is guilty of conversion. If a person hire a horse to go to a particular place, or a specified distance, and he go t.o another place or greater distance, that is a conversion of the horse. Fish v. Ferris, 5 Duer, 49; Lucas v. Trumbull, 15 Gray, 306; Wheelock, v. Wheelwright, 5 Mass. 104. Upon the same principle, a common carrier, who, having received goods to be carried to a designated place, transports them to another place, for the purpose of preventing their coming to the possession of the consignee, and depriving him of their use and disposition, is liable for the conversion of the goods. After the conversion has taken place, the owner is under no obligation to receive the property. Brewster v. Silliman, 38 N, Y. 423. So that, if there was a conversion of the plaintiff’s goods by the defendant, prior to the 5th of May, when he was notified-they had reached Shawnee, his right of action for their value was complete; and any loss of the goods occuring after the conversion, must fall upon thé defendant. No tender of the goods after the conversion, nor refusal to accept them, could cast the loss upon the plaintiff, because he was not then obliged to receive them. It would have been error, therefore, in view of the evidence tending to establish the conversion, to give the instruction requested, which would have required the jury to find for the defendant, if the goods were stolen without its negligence, notwithstanding they should also find such prior conversion of them by the defendant.
3. The principal contention of the plaintiff in error is, that there was no conversion, because it was justified, upon the grounds stated in its answer, in with-holding the property from the plaintiff below, and removing it from the state.
The ground chiefly relied on is, that when the goods were received for transportation, a state of lawlessness,, amounting to insurrection, existed at the place to which *499 they were consigned; and that the goods, which consisted entirely of fire-arms and ammunition, were purchased and consigned to the plaintiff, to be used in aid of the insurrection; knowledge of which, having come to the defendant’s officers, they deemed it improper to deliver the goods to the plaintiff, and, after consulting the governor of the state, and under his advice, as it is claimed, they caused them to be taken to Baltimore, and there detained until the May following, when they were re-shipped to Newark, and thence to Shawnee. All these allegations of the answer, except that the property was removed out of the state, and there detained, were denied by the reply, and the issues of fact thus raised were submitted to the determination of the jury. There was evidence tending to show that at Shawnee and vicinity, and in the Hocking valley, distant some six miles or more from Shawnee, there were numerous coal mines, operated by different owners, where a large number of miners were employed. In the fall of 1884, the operatives were on a “strike,” owing to a disagreement about their wages, Operations at some of the mines were suspended, while to continue some of those in the Hocking valley, miners were brought in from other localities to take the place of those who had refused longer to work. Apprehensions were entertained by those operators who had employed miners from other places, that the “strikers,” as they are called by the witnesses, would destroy or injure their property, and forcibly prevent their recent employes from working in the mines. These operators employed persons to keep watch over their property, and prevent interference with their new employes. ■ Fires broke out at some of the mines, and at a tunnel on defendant’s road near Shawmee, which the strikers were suspected by the defendant and others, of having caused; and considerable alarm existed in that region. The testimony is conflicting as to the extent of the trouble and its duration, but it continued until after January, 1885, and gradually passed away without any 'Outbreak of violence, or obstruction of the lawful authorities.
*500 The plaintiff gave evidence tending to prove that the goods consigned to him were purchased for lawful purposes, and were intended for no other use; that he kept a store in Shawnee, where he expected to make lawful sales of these, and other goods of the kind, for which there was a general demand.
The court charged the jury, in substance, that if they found the facts to be as alleged by the defendant, it was justified in with-holding the goods from the plaintiff; otherwise, it was not. No exception was taken to the charge, nor was any request made for further instructions on the subject. There is an • exception, purporting to be to that part of the charge, “stating to the jury that no testimony as to the advice of Governor Hoadly should be considered by them.” But we have been unable to discover that statement in the charge. The verdict was for the plaintiff upon all the issues. It is not the duty of this court, as it was that of the circuit court, to weigh the evidence, and determine whether it was sufficient to sustain the verdict. We cannot say there was no evidence, tending to prove these issues for the plaintiff; nor is the lack of such evidence assigned as error, here, or advanced in argument. We see nothing in the charge on this branch of the case, of which the plaintiff in error can justly complain. It is not claimed the liability of the defendant was limited by special contract. Its obligation was, therefore, that imposed by the rules of the common law, which made it an insurer of the goods against all losses, except those arising from the act of God, or the public enemies, or from the conduct of the shipper, or the inherent nature of the goods, or, as is held in some cases, from the act or mandate of public authority. With respect to the last exception stated above, the rule seems to be now established, that a common carrier is not liable, if the goods be taken from his possession by legal process against the owner, or if, without his fault, they become obnoxious to the requirements of the police power of the state, and are injured or destroyed by its authority; as where they are infected with contagious disease, or are intoxicating liquors intended for use or sale *501 in violation of tbe laws of the state, which require their seizure and destruction. Wells v. Steamship Co., 4 Cliff, 228; Blivin v. Railroad Co., 36 N. Y. 407. But, in order to protect the carrier in such cases, it is necessary that the seizure be made without the procurement or connivance of the carrier; that the proceeding or process under which it wao made appear to be valid, and that the carrier give prompt notice to the owner. Gibbons v. Farwell, 63 Mich. 344; Kiff v. Railway Co., 117 Mass. 591; Blivin v. Railroad Co., 36 N. Y. 403; Railway Co. v. Yohe, 51 Ind, 181. “The principle of the exception,” it is said, in Wells v. Steamship Co., supra, “is, that the carrier is not obliged to violate the law of the jurisdiction to comply with its contract.” In Atkinson v. Richie, 10 East. 534, it is held, that the contract of a common carrier is always subject to the implied condition that he may lawfully comply with its terms; and if its performance subsequently becomes unlawful without his fault, he is not required to violate the law of the jurisdiction to complete his undertaking. We see no reason why the exception might not be extended to embrace cases where fire arms, intended to be used in promoting riots and public disturbances, are seized by the public authorities to prevent such use of them. But the question is not fairly before us. The jury must have found that the arms and ammunition consigned to the plaintiff, were purchased and intended for lawful purposes, unless, indeed, the sale of such property in this state, is, of itself, unlawful. We have been referred to no statute making it so, and know of none, except the one prohibiting the sale of property of that description to minors under the age of fourteen years. The prohibition might wisely be much extended; but that is a matter of legislative policy. The record leaves no doubt, that in causing the property to be removed from the state, and withheld from the plaintiff, the officers of the defendant were prompted by commendable motives, and acted under a sincere belief they were subserving the public good. But the motive by which a party was controlled in the conversion of property, is of no avail as a defense, though it may be shown to prevent the recovery of exem *502 plary damages. Gibbons v. Farwell, supra; Harker v. Dement, 9 Gill. (Md.) 7.
4. The only other ground which the defendant plead as a justification of its failure to carry the goods to their destination in due course of transit, was, that a tunnel on its road, between the place of shipment and that to which the goods were consigned, had been set on fire by the plaintiff’s associates, with his knowledge, which rendered it impossible for the defendant to preform its contract. This was put in issue by the reply. The evidence shows that the tunnel, called the Bristol tunnel, was discovered to be on fire on the morning of the 1st of January, 1885, but the origin of the fire was not shown; nor did the evidence implicate the plaintiff with it, or show that he had any knowledge of how it was caused. It further appeared, that within a few days afterwards, arrangements were made by the defendant, by which the express matter carried either way on the road could be, and was transferred around the tunnel, and the plaintiff’s goods could have been so transferred and delivered to him as soon as January 7, 1885.
The instructions of the court upon this issue, were to the effect that, if thé tunnel was rendered impassable for cars, the defendant was excused from making delivery until the obstruction ceased, or other means of effecting the delivery could reasonably be procured; and then, further delay in making the delivery, on account of the tunnel, was not excused, unless the obstruction was caused in whole or in part by the plaintiff. No exception was taken to this part of thecharge, and it appears entirely unobjectionable. The defendant was bound to provide sufficient and suitable means for the carriage of the goods, and make delivery of them with all convenient dispatch. And while accidents and obstructions will excuse delay, they do not put an end to the contract. As soon as the impediment to the transportation of the property is removed, or can reasonably be overcome, the carrier must complete the contract without further delay,
5. It is further claimed that the court erred in its refusal to. give in charge, an instruction requested oh the measure *503 of damages, which was, in effect, that if the plaintiff had an opportunity of receiving the goods on the 4th day of May, 1885, and refused to take them, his only measure of damages was the difference between their value on that day, and on the 5th of January preceding.
This instruction might have been proper, if there were no question of the conversion of the property by the defendant involved in the case. If the failure to deliver the goods arose, from delay merely, the measure of damages is. ordinarily, that stated in the request, though reasonable expenses occasioned by the delay may also be allowed in such cases. But the measure of damages was not made to depend, by the instruction requested, upon whether the failure to deliver the property was the result of delay merely; and to have given it, would have left the jury no alternative but to fix the damages according to that measure, though they should find in favor of the plaintiff on the question of conversion. If there was a conversion of the goods by the defendant, a different rule of damages applies, which is the value of the property at the time of its conversion.
6, Finally, it is contended the court committed an error in- refusing to instruct the jury that, to enable the plaintiff to recover any damages, it must appear that he tendered the defendant the amount of its legal charges and advances.
The action was not one for the recovery of the property, but for its unlawful conversion. The rule contended for may be a sound one when applied to actions of the former class, but it has no application to those of the latter class.
There being no substantial error in the record, the

Judgment is affirmed.