# CHARLESTON.

## TOLEDO SCALE CO. v. BAILEY, ETC.

Submitted October 3, 1916.   Decided October 10, 1916.

1. PRINCIPAL AND AGENT—*Rights and Liabilities of Third Persons— Authority of Agent.*

    A person dealing with an agent is bound to take notice of his authority.—(p. 799).

2. SAME.

    A contract for the purchase of a machine, made with an agent authorized to make such contracts subject to approval only, is not binding on the principal until ratified.   (p. 799).

3. SALES—*Conditional Sales—Record—Necessity.*

    Sec. 3, Ch. 74, Code, does not apply to such a contract, until it is ratified.   (p. 799).

4. EXECUTION—*Sale of Property—Implied Warranty.*

    There is no implied warranty of title to property sold under execution, and, generally, the purchaser acquires no better title than the person had, whose property was sold.   (p. 801).

5. PARTIES—*Defects and Objections—Nonjoinder.*

It is too late to take advantage of a non-joinder of defendants, after joinder of issue on the merits, even in a case appealed from a justice. (p. 802).

Error to Circuit Court, Cabell County.

Action by the Toledo Scale Company against L. B. Bailey, doing business etc. Judgment for defendant, and plaintiff bring error.

*Reversed and remanded.*

*W. K. Cowden,* for plaintiff in error.

WILLIAMS, PRESIDENT:

To a judgment for defendant, L. B. Bailey, in detinue to recover possession of one computing scale of the agreed value of $140.00, plaintiff, Toledo Scale Company, a corporation, obtained this writ of error.

The scale had been sold by one of plaintiff's agents to J. H. Roy & Co., in the City of Huntington, at the price of $140.00, to be paid in installments. After paying $30.00, Roy & Co. exchanged it for another one, and the plaintiff credited the amount paid on the price of the first one on account of the second. Plaintiff's agent, E. F. Kincaid, then agreed to sell to McKee & McKee, a small grocery firm in the City of Huntington, the scale taken over in the exchange, and delivered it to them, taking their written contract, in the form of an order to the plaintiff company, to ship the scale to them. Kincaid agreed to credit their account with the $30.00 which had been paid by Roy & Co., apparently not knowing that Roy & Co. had been given credit for it on account of the new machine. The contract was made on the 2nd of June, 1914, with J. E. McKee, the junior member of the firm of McKee & McKee, who drew the firm's check for $10.00 to meet the initial payment. The balance of the purchase price was to be paid in monthly installments of $10.00 each. Kincaid swears that he agreed with J. E. McKee not to forward the order and check to the plaintiff company, until said J. E. McKee could consult with his senior partner, who was not present when he signed the contract. The court at

first refused to allow Kincaid to testify respecting the oral understanding between himself and J. E. McKee at the time the paper was signed, but later permitted him to do so, no objection then being made. He says: ''There was no special arrangement, except that I was to hold the order up for a few days. I don't remember just how many days, and if McKee didn't object within a certain length of time, I was to send the order in, which I did.'' Kincaid did retain them until the 15th of June, and, not hearing from either one of the McKees, he forwarded them to the plaintiff's home office, in Toledo, and the next day he received a reply rejecting the contract. Kincaid swears he did not have authority to bind his principal by contract, but that all sales, made by sales agents, were required to be accepted by the plaintiff company at its home office. Respecting this limited authority, Kincaid is corroborated by the depositions of other witnesses, read in behalf of the plaintiff. Moreover, the contract is in printed form, and contains, at the bottom, the word ''accepted'', and a blank space for the date and signature of the proper agent of plaintiff company. Immediately on receipt of the contract and check, plaintiff wrote its agent, Kincaid, under date of June 16, 1914, refusing to accept the contract of sale, unless he would assume to pay the $30.00 with which he had credited McKee & McKee, and enclosed with the letter, the written contract and initial payment of $10.00. Having endorsed and deposited, in a Toledo bank, for collection, the check of McKee & McKee, plaintiff drew its own check for the same amount, payable to McKee & McKee. Knowing that McKee & McKee's check, which was drawn on a bank in Huntington, would be dishonored, Kincaid did not turn over to them plaintiff's check, nor did he return it immediately to plaintiff.

On June 5, 1914, McKee & McKee confessed judgment, in a justice's court, in favor of Loar Berry & Co. for $173.09, and execution was immediately issued thereon and levied upon the personal effects of McKee & McKee, including the scale in question. The scale was sold at public auction to the defendant, Mrs. L. B. Bailey, and thereupon this action was brought, before the same justice, to recover possession of it.

The justice having rendered judgment for defendant, the plaintiff appealed the case to the circuit court.

The principal question involved is one of title. If McKee & McKee did not have title to the scale, it is clear the constable could confer none upon the purchaser at the execution sale, unless the case falls under Sec. 3, Ch. 74, Code, making void, as to creditors and purchasers for value, all contracts for the sale of goods and chattels, reserving title in the seller, unless recorded. The contract in this case was never recorded, and the theory of the trial judge seems to have been that the rights of the parties were governed by the statute. We do not think so. Before the statute can apply there must have been a valid contract of sale upon condition; the minds of the contracting parties must have met in order to make a binding agreement between them, and the evidence is not sufficient to prove there was such an agreement. The signing of the contract by McKee & McKee and the delivery of the scale to them, by plaintiff's agent, is not enough, if the agent had not authority to make the contract. One dealing with an agent is bound to take knowledge of the extent of his authority. This general rule is subject to few exceptions, and certainly to none which would prevent its application in this case. The uncontradicted testimony of Kincaid proves that he did not have authority to bind his principal by the contract, that it had to be approved by it before it was binding; it was made subject to plaintiff's approval, and was never approved. It is proven by uncontradicted testimony that plaintiff repudiated it almost immediately after Kincaid had sent it in. The deposit of McKee & McKee's check in a Toledo bank, for collection, is not sufficient to prove an implied acceptance. This act of plaintiff was fully explained by witness, W. A. Zolg, its agent in charge of its salesmen's and customers' accounts. He swears: ''The contract, together with the remittance to apply on them, come in to our Mailing Department in the regular course and are then turned over to our Accounting Department, who examine the check, if such is the case, to see that it is regular and then after making proper endorsement, the check is deposited in the regular manner. The order is then turned over to our Order Depart-

ment, either for acceptance or rejection. The remittance is held by our Accounting Department as an unapplied credit to the sender and if the contract is subsequently accepted by us, the credit is transferred to the customer's account. In the event that the order is rejected, the contract is immediately returned to the salesman having taken it, together with our own check in the sum of the original remittance with directions to our salesman to return this check to the customer as reimbursement, with advice that his contract is not acceptable to our Company. Q. Will you kindly state, if you know, the circumstances under which this transaction was handled? A. This matter was handled in the regular manner as I have just outlined. The check for $10.00 received from McKee & McKee, was deposited and held by us as an unapplied credit, and when our Order Department refused to accept the order on the terms specified, the contract together with our own Company check in the sum of $10.00 was turned over to Mr. E. F. Kincaid with instructions to return it to the customer."

A letter of July 7, 1914, from plaintiff to McKee & McKee is exhibited in evidence. It informed them that plaintiff, on that day, drew upon them for $10.00, through the Twentieth Street Bank, to cover their check, which plaintiff learned had been dishonored. It might be argued that that was sufficient evidence of a ratification to go to the jury. We think not. The letter expressly says the sale contract had been rejected, and notifies McKee & McKee that their check had been returned to plaintiff, dishonored. Having endorsed it to a bank, they were, of course, liable. Plaintiff then supposed its own check, which it had previously sent to Kincaid, had been turned over to McKee & McKee, and its purpose in drawing the draft was, not to collect the initial payment on the scale, but to get back the money which it thought had improperly gone to them. This is fully explained by the testimony of Kincaid, who says, that when plaintiff sent him its personal check payable to McKee & McKee, he neither returned it immediately, nor delivered it to McKee & McKee, but retained it, knowing then that they were insolvent. A careful inspection of the record reveals no evidence on which a jury could be justified in finding, either that Kincaid had authority to bind

his principal by the contract of sale, or that his principal thereafter ratified the contract. There is no implied warranty of title to property sold under execution, and McKee & McKee, having no title to the scale when it was so sold, could confer none upon the purchaser. It therefore, follows that plaintiff's peremptory instruction should have been given.

It is proven that Mrs. L. B. Bailey, the sole defendant, is a member of a firm, composed of herself, T. Roy and J. W. Stuart; and it might be argued that the non-joinder is fatal to plaintiff's action. But not so. Defendant can not take advantage of the non-joinder, after having submitted to a trial upon a plea to the merits. True, the pleadings in a justice's court are informal and generally oral, and a formal plea in abatement may not be necessary in this case, but the matter ought to have been called to plaintiff's attention, in some manner, before entering upon the trial on the merits of the case. Plaintiff was entitled to be informed, so that it could have amended its writ, if it had desired to do so; it was not given that opportunity. After joining issue on the merits, such objection comes too late, even in a case appealed from a justice. The order entered on the day of trial is, in part, as follows:

"This day came the parties by their attorneys, and the defendant for plea says that she doth not detain the property in the plaintiff's summons and complaint specified, in manner and form as the plaintiff hath complained against her, and of this she puts herself upon the country, and the plaintiff doth the like, and issue is thereupon joined. And thereupon came a jury, to-wit," etc.

The non-joinder seems not to have been raised in any manner in the justice's court, for it appears that defendant, as principal with her husband as surety, gave a counter-bond for the purpose of retaining possession of the scale pending a determination of the right thereto. This would seem to indicate that the non-joinder is purely an afterthought.

The judgment is reversed, the verdict set aside and the case remanded for a new trial.

*Reversed and remanded.*