# CHARLESTON.

ROANOKE AUTO & IMPLEMENT COMPANY *v.* B. L. HANCOCK

(No. 5750)

Submitted January 25, 1927.   Decided February 1, 1927.

1. PRINCIPAL AND AGENT—*Contract For Purchase of Automobile With Agent Authorized to Contract; Subject to Approval by Principal, Does Not Bind Principal Until Approval.*

   A contract for the purchase of an automobile made with an agent authorized to make such contract, subject to ap-

proval only by the principal, is not binding on the principal until ratified by him (2nd point in syllabus *Toledo Scale Co.* v. *Bailey,* 78 W. Va. 797). (p. 104).

(Agency, 2 C. J. § 229 [Anno].)

2.  SAME—*Principal May Ratify Contract by Agent in Excess of and Directly Contrary to, His Authority; Ratification of Agent's Contract Beyond His Authority, With Knowledge of Contents, or Deliberate Approval Without Inquiry, Must be Shown; Immediate Repudiation of Unauthorized Contract by Principal on Learning Its Terms Tends Strongly to Rebut Presumption of Ratification.*

Ratification of a contract made by an agent in excess and in direct contravention of his authority can be made by the principal.  But it must be shown that the principal either ratified knowing its contents, or that he deliberately approved the contract without inquiry, having all the knowledge thereof which he cared to have.  Immediate repudiation of the unauthorized contract by the principal, upon learning its terms, tends strongly to rebut any presumption of ratification. (p. 108).

(Agency, 2 C. J. §§ 82, 93, 657.)

(NOTE:  Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Woods, Judge, absent.

Error to Circuit Court, Mercer County.

Detinue by the Roanoke Auto and Implement Company against B. L. Hancock.  Judgment for costs for defendant, and plaintiff brings error.

*Judgment reversed; verdict set aside; new trial awarded.*

*Geo. Richardson, Jr.,* and *A. F. Kingdon,* for plaintiff in error.

*Sanders, Crockett, Fox & Sanders,* for defendant in error.

Lively, Judge:

The plaintiff, Roanoke Auto and Implement Company, obtained this writ to a judgment for costs in favor of defendant, B. L. Hancock, in an action of detinue for the recovery of an automobile.

M. L. Ellis, trading as the E. & B. Motor Company, in Bluefield, West Virginia, entered into a verbal agreement with the Roanoke Auto and Implement Company of Roanoke,

Virginia, distributor of Hupmobile automobiles for part of Virginia and the counties of Mercer and McDowell in West Virginia, whereby Ellis in connection with his automobile repair business was to negotiate with persons interested in the purchase of Hupmobile cars, and upon all orders accepted by the plaintiff he was to receive a commission. No particular territory was assigned to Ellis, and no cars were kept in stock by him, although on several occasions Hupmobile machines were left at his repair shop to be used in making demonstrations to prospective purchasers. Under the agreement, Ellis was required to submit to plaintiff for its approval all orders he took for cars, and a blank form called a "purchase contract," authorizing plaintiff to enter an order for a specified type of automobile, and setting out the terms of the sale, etc., was furnished to Ellis. This form of "purchase contract" contained spaces for the signature of the salesman making the sale, the prospective purchaser, and a space for the signature of the plaintiff company, and included a provision that the purchase contract was "not valid unless signed by an officer of the company."

On August 1, 1925, defendant Hancock, having noticed that Ellis' E. & B. Motor Company was a Hupmobile service station, and having seen Ellis' ad in a newspaper, advertising the sale of Hupmobile automobiles, went into the E. & B. Motor Company's place of business and entered into negotiations with Ellis for the purchase of an eight cylinder Hupmobile sedan, the purchase price of which was $2,395.00. Ellis telephoned the plaintiff Company at Roanoke, telling them of the prospective sale, and was informed that in making the deal with Hancock he could allow defendant $1,000.00 for a used Marmon car which he desired to trade in, if the car was a 1923 or 1924 model and was in good mechanical condition. On this same day defendant signed one of the "purchase contract" forms mentioned above, and Ellis signed as the representative of the plaintiff company. In this purchase contract it was stipulated that defendant was to be allowed a credit of $1,675.00 on his second-hand Marmon car; that there should be a cash payment of $360.00, and that the

deferred payment of $360.00 should be represented by four notes. The cash payment was made to Ellis' representative (by check payable to Ellis' E. & B. Motor Company), and the four notes payable to the E. & B. Motor Company were delivered to him, on the day the contract was signed, August 1st.

About August 6th, Ellis and defendant went to Roanoke to get a machine of the type ordered by the latter. Upon their arrival at the plaintiff's place of business in Roanoke, Ellis informed defendant that before he could complete the sale and get the car, he (Ellis) would have to make a cash payment and get the approval of Waldrop, the secretary-treasurer of plaintiff company. At that time Ellis saw Waldrop and talked to him out of the defendant's presence. Waldrop asked Ellis if he had arranged for an allowance of $1000.00 for the Marmon car, and Ellis replied that he had. Thereupon he delivered the car to Ellis, and told him that he could close the deal and deliver the car to defendant upon the terms agreed upon. Ellis and defendant got in the automobile and drove back to Bluefield. A day or so after this, not being able to get a contract for the car, and learning that defendant was attempting to hold it under a sales order, plaintiff sent one of its salesmen, a Mr. White, to Bluefield to look into the matter. White went to see Ellis who showed him the "purchase contract" signed by himself and defendant, in which the latter was allowed a credit of $1,675 for the used Marmon car. White, stating that such an allowance was contrary to Ellis' instructions, endeavored to cancel the deal with defendant and secure possession of the car which had been delivered to him. He was unsuccessful. A short time thereafter, Waldrop, secretary-treasurer of plaintiff company, came to Bluefield, secured the cash payment and deferred payment notes made payable to the E. & B. Motor Company, from Ellis, tendered them to defendant, and demanded the car held by him. Defendant refused to comply with his demand, and this suit followed. There is no substantial conflict in the evidence.

The errors assigned are that the court erred: (1) In refusing to set aside the verdict as contrary to the law and

evidence; and (2) In the giving and refusing of instructions.

It is true that Ellis had no actual authority to complete the sale, for it is shown that any order he might secure was subject to the approval of the plaintiff, and the plaintiff did not approve a sale upon the terms agreed upon in the purchase contract. But it is contended by counsel for defendant that apparent authority in Ellis to sell the car to Hancock is shown by the evidence, and that defendant was thus relieved from making reasonable inquiry. It is maintained that as Ellis was conducting an established place of business for the repair and servicing of Hupmobiles, and at times had cars in his possession for demonstration purposes, and advertised the sale of. Hupmobiles in connection with his repair service, which facts were known by the plaintiff, when coupled with the additional circumstance that there was no written contract between plaintiff and Ellis as to the scope of his agency, and the fact that the car was delivered to defendant at the place of business at Roanoke, establishes at least an apparent authority in Ellis to make the sale. It is further argued that the purchase contract signed by Ellis and defendant, and which was not approved by plaintiff, is not a determining factor in the case, because the whole transaction was completed between plaintiff and defendant without reference to that preliminary order.

We cannot agree with this view of the case, for even though it should . be considered that the circumstances relied upon established apparent authority in Ellis to complete the sale, yet we have the fact that the purchase contract signed by Ellis as agent and by defendant, at least five days before the delivery of the car to defendant, contained the condition that the order was not valid unless signed by an officer of the company. That was notice to defendant that whatever may have been the apparent authority of Ellis it was restricted to that extent. *Toledo Scale Co.* v. *Bailey,* 78 W. Va. 797. The cash payment was made to Ellis at Bluefield on August 1st, and the deferred purchase money notes were then delivered to him. The defendant did not rely upon the delivery of the machine to Ellis at Roanoke five days later. He relied

upon the authority of Ellis to execute the contract signed by them on August 1st. There is nothing in the record to warrant the assumption that plaintiff had waived the condition in the contract of purchase that the order must be approved by an officer of the plaintiff company. The mere fact that the plaintiff delivered the car to Ellis for the purpose of closing the deal with Hancock, would not, under the facts of this case, be such a waiver; nor would it tend to indicate that the plaintiff would not require a duly executed "purchase contract" subject to its approval or rejection. Then again, besides the restriction in the agent's authority as contained in the purchase contract, which restriction defendant says he noticed at the time he signed the writing on August 1st, defendant had the additional warning given to him by Ellis at the time they went to the place of business of plaintiff at Roanoke, when he says Ellis told him he (Ellis) would have to make a cash payment and obtain Waldrop's approval of the sale before he could deliver the car. Defendant had written notice in the sales contract, and verbal notice from Ellis that the latter's authority to sell was limited. He made no effort to ascertain its extent, and relied upon Ellis. The latter was not a witness. While at Roanoke, Hancock did not see and made no effort to see Waldrop or any one in authority in the company. Defendant was fully advised as to the narrow scope of the agent's authority, and the duty devolved upon him to ascertain whether Ellis' contract with him had the approval of the plaintiff company. It is a well settled rule of law that a person who contracts with an agent is put upon inquiry as to the extent and scope of his agency, and must discover at his peril whether it is in nature and extent sufficient to permit the agent to do the proposed act. 2 C. J. page 562, Sec. 204; *McComas & Sons* v. *Sharlow Gas Co.,* 93 W. Va. 265; *Farr* v. *Weaver,* 89 W. Va. 211.

It is further contended by counsel for defendant that even though Ellis may have exceeded his authority, the facts and circumstances of this case establish a ratification by the plaintiff. There is no evidence that the plaintiff assumed the responsibility of ratifying Ellis' act without due inquiry, nor

that the plaintiff had any knowledge of the terms agreed upon by Ellis and defendant, at the time it delivered the car to Ellis for the purpose of closing the trade with defendant. Therefore there was no ratification by the principal of the agent's unauthorized act. "It may therefore be stated as the general rule, that except in those cases in which the principal intentionally assumes the responsibility without inquiry, or deliberately ratifies, having all the knowledge in respect to the act which he cares to have, any ratification of an unauthorized act or contract, in order to be effectual and obligatory upon the alleged principal, must be shown to have been made by him with a full and complete knowledge of all the material facts connected with the transaction to which it relates; and especially must it appear that the existence of the contract and its nature and consideration were known to him." Mechem on Agency (2nd ed.), Sec. 395, page 286. Waldrop, upon learning a day or so after the delivery of the car to Ellis at Roanoke, that defendant was claiming the car under a sales contract which he (Waldrop) had not seen or approved, took prompt action to recover the car from defendant. This was a circumstance tending to negative the alleged ratification.

It is also argued that the plaintiff is estopped to deny the apparent authority of Ellis to make the sale, under the principle that where one of two equally innocent persons must suffer, he must bear the burden who by his conduct has induced the loss. In speaking of this proposition, Mechem on Agency, (2d ed.), Sec. 749, page 532, says, "It seems perfectly clear that the incidence of the loss can only be shifted where the parties were not equally innocent, and that, before the loss can be thrown upon the principal, he must be shown to have been guilty of some misconduct,—that his conduct must have contributed in some way, which reasonable care would have avoided, to the perpetration of the wrong. Certainly the mere employment of an agent in the ordinary way is not such misconduct, unless we are prepared to say that one avails himself of this common, useful and supposedly lawful instrumentality at his risk, and this has not hitherto

been deemed to be the law.'' We do not believe that the plaintiff in this case has by any misconduct contributed to the perpetration of the alleged wrong, and, therefore, the principle sought to be invoked by the defendant is inapplicable.

As there was no material conflict in the evidence, the disposition of the case is resolved by the law. The peremptory instruction to find for the plaintiff should have been given.

*Judgment reversed; verdict set aside; new trial awarded.*